UNITED STATES of America,
Plaintiff–Appellee,

v.

William H. WALL, Defendant–Appellant.

No. 93–1427.

United States Court of Appeals,
Tenth Circuit.

Oct. 14, 1994.

**1444**

Lawrence J. Kelly, Englewood, CO, for appellant.

William R. Lucero, Asst. U.S. Atty. (Henry L. Solano, U.S. Atty., with him on the brief), Denver, CO, for appellee.

Before SEYMOUR, Chief Judge, McWILLIAMS, and ANDERSON, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Defendant William H. Wall, Jr., appeals from his conviction and sentence on six counts of bank fraud. He argues that the district court erred in failing to dismiss several counts resulting in bank fraud convictions as multiplicious, and in failing to dismiss a superseding indictment entirely because it demonstrated prosecutorial vindictiveness. We affirm.

## BACKGROUND

Wall is a Colorado commercial real estate developer who, in 1985, determined that he needed $250,000 to complete the purchase of a real estate company, Van Schaak and Company ("VSC"), through a corporation, Austin Capital Corporation, in which Wall was a principal. Because Wall already had substantial debts and was delinquent on numerous loans in Colorado and other states, he was unable to borrow the necessary sum himself. Accordingly, he embarked on an elaborate scheme with Donald J. Hogoboom, a banker and officer with Citizens' Bank of Littleton ("CBL"), whereby CBL issued loans to other individuals, including Bradley W. Rothhammer, a business associate of Wall, and Gary L. Miles, the brother of Wall's business partner, who in turn funneled the proceeds of the loans to Wall without CBL's knowledge or consent. Neither Rothhammer nor Miles intended to repay the loans, because they had agreed with Wall and Hogoboom that Wall and other individuals would repay the loans when they came due. Wall and Hogoboom entered into a similar arrangement with Dudley Bo Mitchell, a director of CBL, pursuant to which the proceeds of other loans from different financial institutions were funneled through Mitchell to Wall.

Wall used the proceeds of these loans to fund a million dollar letter of credit, which was part of a complex transaction designed to permit Wall to purchase VSC. Wall and Hogoboom were involved in a number of other financial transactions, none of which are directly relevant to this appeal.

Eventually, CBL failed, and when an attempt was made to collect on the Miles and Rothhammer loans, both individuals refused to repay the loans.

In October 1992, Wall was indicted on six counts of an eight-count indictment alleging bank fraud and aiding and abetting a bank fraud scheme, in violation of 18 U.S.C. §§ 1344(1) and (2). Counts I and II alleged violations relating to the Mitchell loans. Count III alleged a violation in connection with a letter of credit. Count IV alleged violations in connection with loans to Eugene Cahill, Sr., and counts VII and VIII alleged

violations in connection with the Miles and Rothhammer loans. Four other individuals were indicted along with Wall.

The district court partially granted Wall's motion for severance and ordered four separate trials. As a result, the government filed Superseding Indictment Nos. 1, 2, and 3. Superseding Indictment No. 1 related to the Miles/Rothhammer loans, Superseding Indictment No. 2 related to Wall's involvement in the Cahill loans and the letter of credit transaction, and Superseding Indictment No. 3 related to the Mitchell loans.

Miles and Rothhammer proceeded to trial on Superseding Indictment No. 1, which resulted in Rothhammer's conviction on three counts of making a false statement in violation of 18 U.S.C. § 1014, and Miles's conviction on one count of making a false statement in violation of 18 U.S.C. § 1014, all in connection with the CBL loans.

Wall thereafter filed a motion seeking to dismiss several of the counts against him under Superseding Indictments Nos. 1, 2, and 3 as multiplicious. He argued that the indictments impermissibly charged him with multiple violations of 18 U.S.C. § 1344(2), because the statute itself is ambiguous as to whether the government may charge such multiple violations and that, in the face of such ambiguity, the rule of lenity required dismissal of all but one count. The district court denied the motion and Wall proceeded to trial on Superseding Indictment No. 2, involving the Cahill loans and the letter of credit transaction. During that trial, the court permitted the government to introduce "similar transaction" evidence from the counts in the upcoming trials of Superseding Indictments Nos. 1 and 3. The district court dismissed the letter of credit count and the jury found Wall not guilty on the Cahill loan counts.

The government thereafter returned a new indictment, Superseding Indictment No. 4, which increased the counts relating to the Miles/Rothhammer transactions (former Superseding Indictment No. 1) from two felony counts to six and increased the counts relating to the Mitchell loans (former Superseding Indictment No. 3) from two felony counts to four. Wall filed a motion to dismiss Superseding Indictment No. 4 for prosecutorial vindictiveness. The district court denied the motion, concluding that while "the decision to increase the penalty exposure 225% for imprisonment and 175% in fines occurred after the completion of the first trial" gave rise to a presumption of vindictiveness, the government had rebutted that presumption. Order & Mem. Decision, R.Vol. 3, Tab 133. The district court denied a subsequent motion to dismiss Superseding Indictment No. 4 for due process violations, and Wall proceeded to trial. He was convicted of all six felony counts relating to the Miles/Rothhammer transactions and acquitted of all four counts relating to the Mitchell loans. Wall was sentenced to two concurrent five-year prison terms, two concurrent two and one-half year prison terms (to run consecutively to the two five-year terms), five years of probation, a $50,000 fine, $150,000 in restitution, and a special assessment of $300.00. He appeals.

## DISCUSSION

### I. *Multiplicious Counts:*

■ Wall first argues that it is multiplicious to charge him with two counts of bank fraud, in violation of 18 U.S.C. § 1344(2), for the Miles and Rothhammer loans, when the two loans were simply multiple acts necessary for the completion of a single scheme to defraud. Section 1344(2) provides:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
>
>> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344(2). Wall argues that the "unit of prosecution" for bank fraud is the execution or completion of a scheme, which may, in turn, involve multiple acts. Wall argues that the plain language of section 1344(2) appears to require multiple acts, but concedes that the statute is ambiguous as to the scope of the appropriate unit of prosecu-

tion. In the face of such ambiguity, Wall argues that the rule of lenity mandates an interpretation in his favor and requires dismissal of all but one count of bank fraud.

■ We review de novo Wall's argument that the indictment was multiplicious. *United States v. Hord*, 6 F.3d 276, 280 (5th Cir. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1551, 128 L.Ed.2d 200 (1994); *see also United States v. Bonnett*, 877 F.2d 1450, 1454 (10th Cir.1989). " '[M]ultiplicity refers to multiple counts of an indictment which cover the same criminal behavior.' " *United States v. Fleming*, 19 F.3d 1325, 1330 (10th Cir. 1994) (quoting *United States v. Dashney*, 937 F.2d 532, 540 n. 7 (10th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 402, 116 L.Ed.2d 351 (1991)); *see also United States v. Meuli*, 8 F.3d 1481, 1485 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1403, 128 L.Ed.2d 76 (1994) ("In reviewing multiplicity claims we look to the language of the statute to determine whether Congress intended multiple convictions and sentences under the statute.")

Section 1344 plainly prohibits the execution of a "scheme" to "obtain ... moneys, funds ... or other property [of a bank] by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344(2). Courts addressing the issue have held that "each separate execution of a scheme to defraud may be pled as a distinct count of the indictment." *United States v. Rimell*, 21 F.3d 281, 287 (8th Cir.1994); *see also United States v. Brandon*, 17 F.3d 409, 422 (1st Cir.1994); *United States v. Molinaro*, 11 F.3d 853, 859–60 (9th Cir.1993); *Hord*, 6 F.3d at 281; *United States v. Schwartz*, 899 F.2d 243, 248 (3d Cir.), *cert. denied*, 498 U.S. 901, 111 S.Ct. 259, 112 L.Ed.2d 217 (1990). Thus, the crucial question in any given case is what constitutes the execution of a scheme.

The Eighth Circuit recently has held that " 'the first step in determining the number of offenses is to ascertain the contours of the scheme; once that is done, each execution of that scheme is a separate offense.' " *Rimell*, 21 F.3d at 287 (quoting *United States v. Barnhart*, 979 F.2d 647, 651 (8th Cir.1992)). Similarly, the First Circuit recently has stat-

ed that "[t]he central question for determining multiplicity is 'whether a jury could plausibly find that the actions described in the [disputed] counts of the indictment, objectively viewed, constituted separate executions of the [bank fraud] scheme.' " *Brandon*, 17 F.3d at 422 (quoting *United States v. Lilly*, 983 F.2d 300, 303 (1st Cir.1992)) (alteration in original). The court in *Brandon* observed that a "number of factors are relevant in determining whether a single or multiple executions of bank fraud have taken place, including the number of banks, the number of transactions, and the number of movements of money involved in the scheme." *Id.* The result in each case will therefore depend on the particular facts.

■ We hold that each loan in the Miles/Rothhammer transaction constituted a separate scheme to defraud and it was therefore not multiplicious to include those loans in separate counts. Each loan was made entirely separately from the other and involved different borrowers, with no evident connection to each other. Each involved a separate movement of money, and each, standing alone, put the bank at risk of loss. The loans were not themselves related in any essential way. *Cf. United States v. Lilly*, 983 F.2d 300, 303 (1st Cir.1992) (finding a single execution of a scheme where defendant "assigned to a single bank a single package of documents that consistently misstated a single material fact in order to obtain a single loan, the proceeds of which funded a single real estate purchase"); *United States v. Heath*, 970 F.2d 1397, 1402 (5th Cir.1992) (holding that two separate loans from a single bank were a single execution of a scheme because the two loans were "integrally related; one could not have succeeded without the other"), *cert. denied*, —— U.S. ——, 113 S.Ct. 1643, 123 L.Ed.2d 265 (1993); *United States v. Lemons*, 941 F.2d 309, 317–18 (5th Cir. 1991) (per curiam) (holding that a series of transfers of money to defendant were nonetheless a single execution of a scheme to defraud where the scheme was to fraudulently obtain $212,000 from a financial institution).[1] The fact that a single bank was the

---

1. In denying Wall's motion to dismiss certain  counts as multiplicious, the district court stated

victim does not compel the conclusion that a single scheme was executed. *See Hord,* 6 F.3d at 282; *United States v. Burger,* 964 F.2d 1065, 1074 (10th Cir.1992) ("[E]ach count of the Indictment involving a draw upon a line of credit would constitute a separate execution of the scheme and would be punishable as a separate crime."), *cert. denied,* —— U.S. ——, 113 S.Ct. 1854, 123 L.Ed.2d 477 (1993); *Schwartz,* 899 F.2d at 248.

■ Moreover, the fact that Wall's intent was to use the money for a single purpose does not necessarily mean that every transaction pursuant to which he acquired the money was all part of a unitary scheme, executed only once. "That a criminal may plot on a large scale, envisioning a series of discrete acts as part of a grand plan, does not mean that various aspects of his felonious conduct cannot be separately charged under the bank fraud statute." *Lilly,* 983 F.2d at 303; *see also United States v. Molinaro,* 11 F.3d 853, 860–61 n. 16 (9th Cir.1993) ("[T]wo transactions may have a common purpose but constitute separate executions of a scheme where each involves a new and independent obligation to be truthful."). Thus, "a defendant's mindset" does not, by itself, determine whether a series of acts can properly be viewed as an execution of a single scheme. *Lilly,* 983 F.2d at 303.

In sum, we find the Miles and Rothhammer loans to be separate and distinct executions of a scheme to defraud CBL. The Ninth Circuit's description of a series of executed schemes applies equally here:

> [E]ach of these executions of the overall scheme were chronologically and substantively independent. None depended on the other for its existence. Each had its own

functions and purpose—they were interrelated only because they involved the same overall scheme to use [the financial institution's] resources to finance defendants' real estate ventures.

*Molinaro,* 11 F.3d at 860. We therefore affirm the district court's conclusion that there was no multiplicity.

## II. *Prosecutorial Vindictiveness:*

■ In a claim of prosecutorial vindictiveness, the defendant bears the burden of proving either "(1) actual vindictiveness, or (2) a realistic likelihood of vindictiveness which will give rise to a presumption of vindictiveness." *United States v. Wood,* 36 F.3d 945, 946 (10th Cir. 1994) (quoting *United States v. Raymer,* 941 F.2d 1031, 1040 (10th Cir.1991)); *see also United States v. Goodwin,* 457 U.S. 368, 374, 376, 380–81, 384 & n. 19, 102 S.Ct. 2485, 2489, 2490, 2492–93, 2494 & n. 19, 73 L.Ed.2d 74 (1982). If the defendant successfully bears that burden, the prosecution must "justify its decision with legitimate, articulable, objective reasons" for its actions. *Raymer,* 941 F.2d at 1040.

■ Wall argues that the government acted vindictively when it returned Superseding Indictment No. 4, with its increased number of felony counts and resulting increased risk of imprisonment and fines, immediately after Wall's acquittal on the charges in Superseding Indictment No. 2. He also argues that it was "procedurally unfair" to file Superseding Indictment No. 4 because the district court had permitted the government to introduce evidence concerning the Miles/Rothhammer loans during the trial on Superseding Indictment No. 2 (involving the Cahill loans and the letter of credit), thereby giving the government a preview of Wall's

---

its belief that the Fifth Circuit is in conflict with other circuits in its reluctance to find multiple executions of bank fraud schemes.

We do not perceive any significant conflict between the Fifth Circuit and other circuits. The Fifth Circuit recently discussed its prior bank fraud cases, and noted that what was critical to its conclusion in *Heath* and *Lemons,* that there was a single execution of a scheme to defraud, was that the transactions in those cases were "integrally related *to one another,* such that none could have succeeded without the others." *Hord,* 6 F.3d at 282. In *Hord,* which involved a

scheme to deposit forged and counterfeited checks in a trust account at a bank and then withdraw money from those accounts, the court concluded that "each deposit constituted a separate execution of a single scheme to defraud." *Id.; see also United States v. Barakett,* 994 F.2d 1107, 1111 (5th Cir.1993) (holding no multiplicity where defendant could "identify no linkage between the conduct charged in counts one and two, or between that of counts three and four, other than victim and *modus operandi* "), *cert. denied,* —— U.S. ——, 114 S.Ct. 701, 126 L.Ed.2d 668 (1994).

defenses to the charges on the Miles/Rothhammer loans.[2] We review a district court's factual findings on prosecutorial vindictiveness for clear error; we review de novo "the legal principles which guide the district court." *Raymer,* 941 F.2d at 1039.

"When a defendant exercises constitutional or statutory rights in the course of criminal proceedings, the government may not punish him for such exercise without violating due process guaranteed by the federal Constitution." *Id.* at 1040; *see also Goodwin,* 457 U.S. at 372, 102 S.Ct. at 2488; *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). A prosecutorial decision is not vindictive if it is " 'based upon the normal factors ordinarily considered in determining what course to pursue.' " *Raymer,* 941 F.2d at 1042 (quoting *United States v. DeMichael,* 692 F.2d 1059, 1062 (7th Cir.) *cert. denied,* 461 U.S. 907, 103 S.Ct. 1878, 76 L.Ed.2d 809 (1982)); *see also United States v. P.H.E., Inc.,* 965 F.2d 848, 860 (10th Cir.1992). The test is "whether, 'as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or punitive animus towards the defendant because he exercised his specific legal right.' " *Raymer,* 941 F.2d at 1042 (quoting *United States v. Gallegos–Curiel,* 681 F.2d 1164, 1169 (9th Cir.1982)).

The district court in this case found no evidence of actual vindictiveness, but concluded that there was a presumption of vindictiveness because Superseding Indictment No. 4, with its additional charges and accompanying increased penalty exposure, was brought after Wall's acquittal on Superseding Indictment No. 2, in which that government "had an opportunity to examine and assess the information against Wall." Order & Mem. of Decision, R.Vol. 3, Tab 133 at 10. We disagree.

As the district court and our prior cases acknowledge, there is a distinction between claims of prosecutorial vindictiveness occurring pre-trial and post-trial. Thus, "there is a presumption of vindictiveness when a defendant successfully attacks his first conviction and then receives a harsher sentence on retrial, or when 'the "prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing" ' by charging a successful appellant with a felony covering the same facts." *United States v. Miller,* 948 F.2d 631, 633 (10th Cir.1991) (quoting *Alabama v. Smith,* 490 U.S. 794, 800 n. 3, 109 S.Ct. 2201, 2205 n. 3, 104 L.Ed.2d 865 (1989) (quoting *Blackledge v. Perry,* 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974))), *cert. denied,* —— U.S. ——, 112 S.Ct. 1278, 117 L.Ed.2d 504 (1992).

By contrast, in the pre-trial setting, "the Supreme Court generally has refused to create such presumptions." *Id.* As the district court acknowledged, the setting in this case is somewhat unusual. Pursuant to Wall's own request, four separate trials were initially set, providing that Wall would be tried separately on some charges and with codefendants on others.[3] Wall's acquittal in the trial on Superseding Indictment No. 2, involving the Cahill loans, was followed by Superseding Indictment No. 4, which Wall claims is vindictive. Thus, the claimed prosecutorial vindictiveness occurred after acquittal in one trial, but related to charges in an upcoming trial.

The presumption of vindictiveness arises when there is a "realistic likelihood" of vindictiveness in retaliation for the exercise of a legal right. *Raymer,* 941 F.2d at 1039. Here, Wall identifies no right with respect to which the government retaliated. *Cf. Wood,* 36 F.3d at 947 (affirming the finding of a reasonable likelihood of vindictiveness where decision to reindict was "made soon after Defendant exercised a legal right to the government's disadvantage."). He sought and received partial severance of the charges against him, yet that tactical decision cannot then permit a charge of vindictiveness when the government files superseding indictments in the severed trials. "A claim of vindictive

---

**2.** Evidence of the Miles/Rothhammer loans was admitted under Fed.R.Evid. 404(b) to prove "motive, opportunity, intent ... knowledge, identity, [and] absence of mistake or accident." Government's Notice of Intent to Offer 404(b) Evidence, R. Vol. 1, Tab 55.

**3.** Miles and Rothhammer also filed motions for severance of their charges.

prosecution cannot insulate the defendant from the lawful consequences of his tactical choices." *Raymer*, 941 F.2d at 1042.

Further, Wall cannot expect that the government will not learn from the earlier trial, in which he was acquitted. Even if the government gleaned information about the Miles/Rothhammer transactions in that earlier trial, pursuant to the district court's evidentiary ruling, there is no reason why the government should be compelled to disregard that knowledge in its subsequent prosecution.[4] And the acquittal itself cannot form the basis for a charge of prosecutorial vindictiveness. "When a State brings another indictment supported by evidence against a defendant after an acquittal, the acquittal is a legitimate prosecutorial consideration because the State is not levying punishment for a right exercised but rather for the crimes he committed." *United States v. Esposito*, 968 F.2d 300, 304 (3d Cir.1992).

We therefore hold that the district court erred in finding a presumption of vindictiveness in the government's filing of Superseding Indictment No. 4. Accordingly, we do not reach the issue of whether the government properly rebutted that presumption.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

4. To the extent Wall suggests that the government retaliated against his exercise of his right to defend himself in the first trial, we reject that suggestion. The possibility that the government will learn something useful from a previous trial, which the defendant has sought to have severed from a subsequent trial, is a risk which the defendant always runs in seeking severance.