F I L E D
United States Court of Appeals
Tenth Circuit

JUL 29 1997

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

KIRK BOVIE,

      Defendant-Appellant.

No. 96-1326
(D.C. No. 95-CR-87)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BRORBY, EBEL** and **KELLY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal.  *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.  The case is therefore

ordered submitted without oral argument.

This case arises out of a federal investigation into a multi-kilogram cocaine

---

[*]  This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

distribution organization.  In early 1994, the Federal Bureau of Investigation (FBI) identified several individuals as persons selling large quantities of cocaine in the Denver area.

In February 1995, the district court authorized a wiretap on three phone numbers believed to be used by one of the primary targets of this drug organization.  The wiretap revealed a number of telephone conversations involving Mr. Kirk Bovie and implicating him in the conspiracy.

On March 7, 1995, the grand jury returned a forty-four count indictment against multiple persons.  Mr. Bovie was named in Counts One and Two.  Count One charged Mr. Bovie with conspiracy to possess with the intent to distribute a mixture or substance containing a detectable amount of cocaine from January 1, 1992 through March 3, 1995, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii) and 846 (1994), and 18 U.S.C. § 2 (1994).  Count Two charged him with possession with intent to distribute and distribution of approximately two kilograms of a mixture or substance containing a detectable amount of cocaine from February 24, 1995 through March 1, 1995, in violation of  21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii) and 18 U.S.C. § 2.

On April 7, 1995, the grand jury returned the First Superseding Indictment, which merely added two alleged coconspirators to Count One. On May 5, 1995, a Second Superseding Indictment added another alleged coconspirator to Count One. The remaining forty-three counts were unchanged from the original indictment.

On October 16, 1995, the district court denied Mr. Bovie's Motion to Suppress Intercepted Wire Communications.[1] *United States v. Sorapuru*, 902 F. Supp. 1322, 1330 (D. Colo. 1995) (order denying motion to suppress). The district court determined the wiretap application and the accompanying affidavit contained the information required by 18 U.S.C. § 2518(1). *Id*. at 1326, 1330. Therefore, the district court concluded the wiretap order complied with the requirements of 18 U.S.C. § 2518(3) and was facially sufficient. *Id*.

On January 25, 1996, the grand jury returned a Third Superseding Indictment.[2] This indictment contained only twelve counts and named Mr. Bovie

---

[1] On September 21, 1995, Mr. Bovie joined his co-defendants' motions to suppress.

[2] This indictment was returned two business days before trial. However, trial did not commence until April 1, 1996.

in all twelve. In Count One, the conspiracy dates were changed to February 1, 1994 through March 3, 1995, and only two alleged co-conspirators were named along with Mr. Bovie. Counts Two through Ten charged Mr. Bovie with possession with intent to distribute and distribution of a mixture and substance containing a detectable amount of cocaine on various dates between March 1994 and March 1995, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(ii) and (b)(1)(C), and 18 U.S.C. § 2. Counts Eleven and Twelve charged Mr. Bovie with knowingly and intentionally conducting and attempting to conduct a financial transaction by use of Western Union money transfers knowing and intending the financial transaction would promote the carrying on of specified unlawful activity on June 19, 1994 through June 21, 1994, and June 26, 1994, respectively, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 2. Mr. Bovie moved to dismiss the Third Superseding Indictment on the grounds of procedural unfairness, extreme prejudice, vindictiveness, and violation of his right to due process. The district court denied his motion after a hearing on February 1, 1996.

In April 1996, Mr. Bovie was tried on the charges in the Third Superseding Indictment. On April 12, 1996, the jury found him guilty on Counts One, Three, Four, Five, Six, Eight, Ten, Eleven, and Twelve, and not guilty on Counts Two, Seven and Nine. On July 11, 1996, the district court sentenced Mr. Bovie to 156

months imprisonment on each count of conviction to be served concurrently.

On appeal, Mr. Bovie challenges the district court's rulings regarding his motion to suppress the wiretap evidence, his motion to dismiss the Third Superseding Indictment, and the district court's jury instructions. Mr. Bovie contends: the district court erroneously failed to suppress the evidence obtained from the wiretap because the government failed to meet the mandatory requirement of necessity under 18 U.S.C. § 2518(1)(c) (1994); the Third Superseding Indictment was the result of prosecutorial vindictiveness in violation of his constitutional right to due process; and the jury instructions violated his constitutional right to the presumption of innocence and the requirement the government establish guilt beyond a reasonable doubt.

## I. Motion to Suppress Wiretap Evidence

Mr. Bovie contends the FBI's failure to establish the wiretap's "necessity" as mandated by 18 U.S.C. § 2518(1)(c) requires the suppression of all the evidence obtained from the wiretap. Mr. Bovie argues there was no necessity to resort to a wiretap because the FBI had the ability to infiltrate the alleged conspiracy by means of a confidential informant, and because the FBI had met with "nothing but success" with its use of traditional investigative methods.

"On appeal from a motion to suppress evidence obtained pursuant to a wiretap, we accept the district court's factual findings unless clearly erroneous, review questions of law *de novo*, and view the evidence in the light most favorable to the prevailing party." *United States v. Castillo-Garcia*, ___ F.3d ___, ___, 1997 WL 358649, *5 (10th Cir. 1997). "[W]hether the government demonstrated sufficient 'necessity' under 18 U.S.C. § 2518(1)(c) (1994) to support the issuance of a wiretapping order is a question of law which we review *de novo*." *Id*. (footnote omitted). However, "a wiretap authorization order is presumed proper, and a defendant carries the burden of overcoming this presumption." *United States v. Quintana*, 70 F.3d 1167, 1169 (10th Cir. 1995).

Among other provisions, the government must make a full and complete showing that a wiretap is necessary. 18 U.S.C. § 2518(1)(c). Under the "necessity requirement," an application for a wiretap authorization must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Quintana*, 70 F.3d at 1169 (internal quotation marks omitted). In addition, the judge authorizing the wiretap must find that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18

U.S.C. § 2518(3)(c).

In *Castillo-Garcia*, we held there are four categories of normal investigative procedures the government must address fully in its application: "(1) standard visual and aural surveillance; (2) questioning and interrogation of witnesses or participants (including the use of grand juries and the grant of immunity if necessary); (3) use of search warrants; and (4) infiltration of conspiratorial groups by undercover agents or informants." *Castillo-Garcia*, 1997 ___ F.3d at ___, WL 358649, at *7. In addition, the government must address the use of pen registers or trap and trace devices. *Id*. In its application, the government must explain fully and with particularity what investigative techniques have been tried against the target of the wiretap and why any untried techniques would be either unsuccessful or too dangerous. *Id*. "However, the government need not exhaust or explain its failure to exhaust every *conceivable* normal type investigative procedure before resorting to wiretapping." *Id*. at 8. Nor is the government's failure to explicitly explain its failure to utilize one or more specified categories of normal investigative techniques fatal to the wiretap application "if it is clear, under the government's recitation of the facts of the case, that requiring the government to attempt the unexhausted and unexplained normal investigative techniques would be unreasonable." *Id*.

With these guidelines in mind and after reviewing the government's application for the wiretap and FBI Special Agent Todd C. Wilcox's affidavit in support thereof, we hold the government's application and the district court's authorization satisfy the requirements of 18 U.S.C. § 2518(1)(c) and (3)(c), respectively. Special Agent Wilcox's affidavit explains in detail why normal investigative techniques, which had been attempted, had failed to reveal the full scope of this drug organization or failed to develop sufficient evidence against the key participants such tat a wiretap was necessary.

First, as the government explained, physical surveillance of the primary targets failed to reveal the scope of the drug organization. In fact, the primary targets of the investigation closed their front business, Hardbodies Paint and Body Shop, because they feared the police were watching them; one of the primary targets changed two of his home phone numbers and disconnected his pager shortly after closing their front business; and the government could not make direct contact with the primary targets of the investigation because the primary targets insulated themselves from the actual distribution and acquisition of the cocaine.

Second, the wiretap application revealed the government's questioning and

interviewing of participants-turned-informants was of limited use. The participant-turned-informant witnesses available to the government lacked significant information regarding the scope of the conspiracy. Many of these witnesses were already in custody or were arrested on drug charges themselves. In addition, the application discussed the possibility of expanding the limited grand jury investigation already underway. An Assistant United States Attorney concluded subpoenaing of persons believed to be involved in the conspiracy would not be completely successful because the subjects of the investigation would most likely invoke the Fifth Amendment, it would be unwise to grant immunity to these subjects because it may preclude prosecution of the most culpable persons, and it would alert other conspirators of the investigation, which would jeopardize the on-going investigation.

Third, the government explained search warrants were of limited value in this case since the primary targets of the investigation "have insulated themselves in their residences in such a way that rarely would a person get into a position to develop information upon which probable cause for a search warrant could be developed." Additionally, it was unlikely a successful search and possible drug seizure would be useful against persons not present at the time of the search or that information would be obtained that would reveal the scope of the drug

dealing activities.

Fourth, the confidential sources used in this operation were of limited use since none were able to make a drug purchase from one of the primary targets or to introduce undercover officers for the purpose of making a drug purchase. In addition, the confidential sources reasonably feared reprisal for their direct testimony against any of the primary targets. This fear stemmed from the murder of a confidential informant in another investigation who was supposed to testify against one of the primary targets of this investigation. Even if the confidential sources would testify, the government points out their testimony would be of limited value based on their limited roles in the organization.

Fifth, the government disclosed its extensive use of pen registers, clone pagers, trap and trace, and toll information. However, this information was of limited use since it could not reveal the identities of the parties or the subject matter of the calls. In this case, the true identities of the participants was particularly difficult to ascertain because the suspects frequently used aliases or other people as fronts when obtaining pagers and phones.

We believe the government's explanations in its application comprise "a

full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *See* 18 U.S.C. § 2518(c)(1). Additionally, it is clear from the application that requiring the government to further attempt normal investigative techniques would not be reasonable under these circumstances. Thus, Mr. Bovie fails to overcome the presumption the order is proper. The district court did not err in finding the government had satisfied the "necessity requirement" with regard to the wiretap at issue. *See Sorapuru*, 902 F. Supp. at 1328-29.[3]

## II.  Third Superseding Indictment

Mr. Bovie contends the procedural nature of this case, wherein the government obtained the Third Superseding Indictment over ten months after the original indictment and only two business days before his scheduled trial, demonstrates a realistic likelihood of vindictive prosecution in violation of his constitutional right to due process.[4] Mr. Bovie argues the Third Superseding

---

[3]  For the first time on appeal, the government asserts the "good faith" exception to the exclusionary rule applies. However, as a general rule, this court will not consider an issue on appeal that was not raised below. *Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992).

[4]  At the end of his argument, Mr. Bovie adds the contention the procedural nature of this case establishes prosecutorial "vindictiveness in fact." To the

-11-

Indictment is the product of prosecutorial vindictiveness because he rejected the government's offer and exercised his constitutional right to trial. In addition, Mr. Bovie asserts he was unfairly prejudiced by the increase in the number of charges from the Second Superseding Indictment to the Third Superseding Indictment on the eve of trial.

"Vindictive prosecution claims often turn on the facts, and we review a district court's factual findings under the clearly erroneous standard; our review of the legal principles which guide the district court is *de novo*." *United States v. Raymer*, 941 F.2d 1031, 1039 (10th Cir. 1991) (footnote omitted).

In order to maintain a claim for prosecutorial vindictiveness, a defendant has the burden of proof and must establish either (1) actual vindictiveness or (2) a realistic likelihood of vindictiveness that will give rise to a presumption of vindictiveness. *Raymer*, 941 F.2d at 1040; *United States v. Wall*, 37 F.3d 1443,

extent this is an allegation of "actual vindictiveness," *see* discussion *supra*, we decline to address it as Mr. Bovie failed to raise this in the district court and failed to support the statement with any argument or analysis. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (perfunctory complaints that fail to frame and develop an issue are insufficient to invoke appellate review); *Walker*, 959 F.2d at 896 (as a general rule, we will not consider on appeal an issue not raised in the district court).

1447 (10th Cir. 1994). "If the defendant successfully bears that burden, the prosecution must 'justify its decision with legitimate, articulate, objective reasons' for its actions." *Wall*, 37 F.3d at 1447 (quoting *Raymer*, 941 F.2d at 1040). However, if the defendant does not meet that burden, the district court need not reach the issue of the government's justification. *Raymer*, 941 F.2d at 1040.

"While a prosecutor may penalize a defendant for violating the law, a prosecutor may not punish a defendant for 'exercising a protected statutory or constitutional right.'" *United States v. Contreras*, 108 F.3d 1255, 1262 (10th Cir. 1997) (quoting *United States v. Goodwin*, 457 U.S. 368, 372 (1982)), *petition for cert. filed*, __ U.S.L.W. ____ (U.S. Jun. 7, 1997) (No. 96-9286). However, a prosecutor's offer to a defendant to plead guilty or face more serious charges does not present a "realistic likelihood of vindictiveness" provided, of course, the prosecutor has probable cause on the more serious charges and the defendant is free to accept or reject the offer. *Raymer*, 941 F.2d at 1040 (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 363-64 (1978)). The critical question is whether Mr. Bovie has shown that all of the circumstances, when taken together, support a realistic likelihood of vindictiveness and therefore give rise to the presumption. *United States v. Doran*, 882 F.2d 1511, 1521 (10th Cir. 1989).

After careful review of the district court's decision and the circumstances surrounding the Third Superseding Indictment, we hold Mr. Bovie fails to show a realistic likelihood of vindictiveness. Mr. Bovie's arguments for prosecutorial vindictiveness rely solely on the procedural nature of the case and the differences between the Second and Third Superseding Indictments. In this case, the district court found Mr. Bovie knew his failure to accept a plea agreement would result in the prosecution obtaining a third superseding indictment to narrowly tailor the charges against him as the sole remaining defendant. In a colloquy with Mr. Bovie's counsel, the court stated, "Your client made a choice. Could have pled guilty to the second superseding indictment. He didn't elect to do so. They warned him if he did -- if he didn't -- they were going to reindict." Mr. Bovie's counsel responded and admitted, "There was a warning that there would be a third superseding indictment, absolutely." In closing, the district court recognized that "[w]hile confronting a defendant with a risk of more severe punishment clearly may have a discouraging effect on the defendant's choice of the trial rights, the imposition of these choices is inevitable and permissible." We agree with the district court. Mr. Bovie elected to proceed to trial rather than negotiate a disposition of this case; therefore, he must endure the consequences of his decision.

Additionally, Mr. Bovie's unfair prejudice argument is unpersuasive. "In the absence of procedural unfairness to the defendant, the government may increase charges or make them more precise based upon new information or further evaluation." *Raymer*, 941 F.3d 1042. Since Mr. Bovie was the sole remaining defendant in this case, the government obtained the Third Superseding Indictment, which made the charges more precise and more narrowly tailored to Mr. Bovie's conduct. In addition, the district court continued Mr. Bovie's trial date two and one-half months.[5] Therefore, we hold Mr. Bovie was not unfairly prejudiced by the government's obtaining the Third Superseding Indictment and, in any event, the continuance cured any prejudice he may have incurred.

### III. Jury Instructions

Mr. Bovie contends the jury instructions violated his right to the presumption of innocence and his right to require the government to establish guilt beyond a reasonable doubt. Mr. Bovie argues Jury Instruction No. 1 improperly reduced the government's burden of proof by instructing the jury they could make essential factual determinations based merely on probabilities rather than beyond a reasonable doubt and misstated the presumption of innocence by

---

[5] Due to the court's schedule, the trial date was moved to April 1, 1996 on February 29, 1996 without objection by Mr. Bovie.

instructing the jury to presume the defendant "not guilty" rather than "innocent."

Jury Instruction No. 1 is a lengthy general instruction outlining the duties and responsibilities of the jurors. In pertinent part, Jury Instruction No. 1 provides:

> Any finding of fact you make must be based on probabilities, not possibilities. It may not be based on surmise, speculation, or conjecture. You must not be influenced by sympathy or by prejudice for or against any party in this case. Keep constantly in mind that it would be a violation of your sworn duty to base a verdict upon anything other than the evidence in the case and the instructions of the Court.
>
> ....
>
> The Defendant, Kirk Bovie, has pleaded "not guilty" to this indictment and, therefore, denied that he is guilty of the charges.
>
> You must presume a defendant in a criminal case to be not guilty of the crimes charged. Thus a defendant, although accused of a crime in the indictment, begins the trial with a "clean slate" -- with no evidence against him or her.
>
> ....
>
> It is sufficient if the government has proven one or more of the alternative definitions of the offense beyond a reasonable doubt. The government does not have to prove more than one alternative theory of the offense beyond a reasonable doubt. Proof beyond a reasonable doubt on one theory is enough. But in order for you to return a guilty verdict, all twelve of you must agree that the same alternative theory has been proven beyond a reasonable doubt.
>
> The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant,

for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence. A defendant is not even obligated to produce any evidence by cross-examining the witnesses for the government. The presumption of innocence alone is sufficient to acquit a defendant.

It is not required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense -- the kind of doubt that would make a reasonable person hesitate to act in the most important of his or her own affairs. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it.

Unless the government proves, beyond a reasonable doubt, that the Defendant has committed each and every element of the offense charged, you must find the Defendant not guilty of the offense. If a juror views the evidence in the case as reasonably permitting either of two conclusions -- one of not guilty, the other of guilty -- the juror must, of course, adopt the conclusion of not guilty.

We review challenges to a specific jury instruction objected to at trial *de novo*. *United States v. Smith*, 13 F.3d 1421, 1424 (10th Cir.), *cert. denied*, 513 U.S. 878 (1994); *United States v. Mullins*, 4 F.3d 898, 900 (10th Cir. 1993). We must determine whether the jury, considering the instructions as a whole, was misled and will disturb the judgment only where we have substantial doubt as to whether the jury was fairly guided. *Smith*, 13 F.3d at 1424; *Mullins*, 4 F.3d at 900. Specifically, we must determine whether the jury instructions, taken as a whole, adequately convey the concept of reasonable doubt; we must examine whether a reasonable likelihood exists the jury understood the instructions to

allow conviction based on proof insufficient to meet the beyond a reasonable doubt standard. *United States v. Miller*, 84 F.3d 1244, 1252 (10th Cir.), *cert. denied*, 117 S. Ct. 443 (1996).

Considering Jury Instruction No. 1 in its entirety, we hold the jury was not improperly instructed on the government's burden of proof of beyond a reasonable doubt, nor misled as to the presumption of innocence. In *Miller*, we noted the Supreme Court has "'repeatedly approved' the definition of a reasonable doubt as 'a doubt that would cause a reasonable person to hesitate to act.'" *Miller*, 84 F.3d at 1252 (quoting *Victor v. Nebraska*, 511 U.S. 1 (1994)). This is the exact language used in Jury Instruction No. 1 to explain the burden of proof to the jury. In addition, Jury Instruction No. 1 reminds the jury it must find Mr. Bovie guilty of each element of the offense charged beyond a reasonable doubt, or it must find him not guilty. The language complained of by Mr. Bovie describes the degree of certainty with which the jury must determine the underlying factual issues, not the degree of certainty needed to find him guilty. The inclusion of the "probabilities, not possibilities" language in no way lessened the beyond a reasonable doubt standard, especially in view of the fact the instruction specifically caution the jury not "to single out one instruction alone," but to "consider the instructions as a whole."

Mr. Bovie's argument regarding the presumption of innocence is equally without merit. Jury Instruction No. 1 explained to the jury, "You must presume a defendant in a criminal case to be not guilty of the crimes charged. Thus a defendant, although accused of a crime in the indictment , begins the trial with a "clean slate" -- with no evidence against him or her." The court also instructed the jury "[t]he presumption of innocence alone is sufficient to acquit a defendant." In light of the instruction as a whole, we hold the jury was not misled by these instructions on the presumption of innocence. As a practical matter, in the context of this jury instruction "not guilty" and "innocence" are equivalent.

**AFFIRMED.**

**Entered for the Court**

**WADE BRORBY**
United States Circuit Judge

-19-