**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 16 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CROSBY L. POWELL,

Defendant-Appellant.

No. 98-1111
(D.C. No. 97-CR-91-ALL)
(D. Colo.)

---

**ORDER AND JUDGMENT** *

---

Before **BALDOCK** , **BARRETT** , and **HENRY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Crosby L. Powell appeals from his conviction following a ten-day jury trial on three counts of making a false statement, in violation of 18 U.S.C. § 1001; six counts of bank fraud, in violation of 18 U.S.C. § 1344; and two counts of using a false social security number, in violation of 42 U.S.C. § 408(a)(7)(B). He also appeals his sentence to a forty-six month term of imprisonment and five-year term of supervised release. We affirm.

## BACKGROUND

### False Statements to the Social Security Administration

On November 20, 1990, Powell applied to the Social Security Administration for supplemental security income (SSI) benefits. During the eligibility evaluation process, Powell asserted that he had no bank accounts. The statement, however, was false. On the application date, he had a savings account at Capital Federal Savings and Loan with a balance of $3,138.96, which was above the $2,000 limitation on assets and would have, if known, precluded Powell from receiving SSI benefits.

Powell also made false statements during two interviews conducted to determine whether he remained eligible for SSI. On March 8, 1993, he claimed that he was receiving no income when, in fact, he was receiving a salary from his business, Crosby L. Powell and Associates, which had a division called CLP

Services Company. He made similar false statements on March 23, 1995. Powell received $17,950 in SSI benefits to which he was not entitled and approximately $2,419 in related Medicaid benefits.

**Bank Fraud and Use of a False Social Security Number**

Powell was charged with engaging in four separate bank fraud schemes, from February 1992 through June 1994. Powell opened accounts at four different banks under various versions of his name or in the name of his business, at times using false social security numbers to forestall negative reports on his banking history. [1]   Into these accounts he deposited some legitimately-obtained funds, plus stolen checks and checks drawn on closed accounts. He then wrote checks and made cash withdrawals against the uncollectible deposits.   Powell's deposits from unauthorized sources at all four banks totaled $187,547.46. After recovering some of the money for returned checks, the banks' aggregate loss was $59,158.60.

---

[1]    Powell opened an account at Central Bank in the name of Crosby L. Powell and Associates; at City Center National Bank in the name of CLP Services Company; at the Greater Denver Credit Union in the name of Crosby L. Powell d/b/a CLP Services Co.; and at Norwest Bank in the name of Crosby L. Powell d/b/a Crosby L. Powell and Associates. He used false social security numbers at City Center National Bank and the Greater Denver Credit Union.

**DISCUSSION**

On appeal, Powell raises five issues: (1) whether certain counts of the controlling indictment were multiplicitous; (2) whether the district court abused its discretion in denying Powell's motion under Fed. R. Crim. P. 14 to sever trial of the social security counts from the bank fraud counts; (3) whether the district court erred in limiting the government's disclosure of information related to another investigation; (4) whether the district court erred in admitting evidence of other crimes, wrongs, or acts that should have been excluded under Rule 404(b) of the Federal Rules of Evidence; and (5) whether the district court erred in calculating the amount of loss to the victims, thereby increasing the offense level under U.S.S.G. § 2F.1.1.

**Multiplicity**

We review de novo an argument on multiplicity, which "refers to multiple counts of an indictment which cover the same criminal behavior." United States v. Wall, 37 F.3d 1443, 1446 (10th Cir. 1994) (quotation omitted). "The central question for determining multiplicity is whether a jury could plausibly find that the actions described in the disputed counts of the indictment, objectively viewed, constituted separate executions of the bank fraud scheme." Id. (quotations omitted). " '[E]ach separate execution of a scheme to defraud may be pled as a distinct count of the indictment.'" Id. (quoting United States v. Rimell, 21 F.3d

-4-

281, 287 (8th Cir. 1994)).  We have previously rejected contentions that targeting a single bank as a victim necessarily means a single scheme and that "every transaction pursuant to which [the defendant] acquired money was all part of a unitary [bank fraud] scheme, executed only once."    Id. at 1446-47.

Here, Powell asserts that it is multiplicitous to charge him with two separate counts of bank fraud relating to his dealings with Central Bank (Counts II and III) and two separate counts relating to Norwest Bank (Counts IX and X).  The claim is that Counts II and IX charge the contours of schemes to defraud these two banks and that Counts III and X separately charge acts necessary to the completion of the schemes.  For his primary support, Powell points to indictment language incorporating Counts II and IX by reference in Counts III and X.

The charged scheme called for the withdrawal of unauthorized funds from the targeted banks, using an account balance secured through the deposit of uncollectible checks.  Accordingly, each withdrawal was a separate and distinct execution of the same scheme, not an integrally-related act in furtherance of a single offense.  The use of incorporation language in the indictment does not change our analysis.   Cf. United States v. Serino  , 835 F.2d 924, 930 (1st Cir. 1987) (holding that incorporation by reference of conspiracy count into substantive count does not constitute multiplicity).  We affirm the district court's conclusion that the indictment was not multiplicitous.

**Severance**

"Whether to grant severance under Rule 14 rests within the discretion of the district court and the burden on defendant to show an abuse of discretion in this context is a difficult one. Prejudicial joinder occurs under Rule 14 when an individual's right to a fair trial is threatened or actually deprived." United States v. Johnson , 130 F.3d 1420, 1427 (10th Cir. 1997), cert denied , 119 S. Ct. 78 (1998) (quotations omitted). A defendant who wishes to remain silent on some counts and testify on other counts is not entitled to a severance under Rule 14 without

> a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information--regarding the nature of the testimony that he wishes to give on one count and his reasons for not wishing to testify on the other--to satisfy the court that the claim of prejudice is genuine and to enable it to intelligently weigh the considerations of economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying.

United States v. Martin , 18 F.3d 1515, 1518-19 (10th Cir. 1994) (quoting United States v. Valentine , 706 F.2d 282, 291 (10th Cir. 1983) (further citation omitted)).

Powell argues that separate trials would have given him the opportunity to provide testimony on the charges that he had made false statements to obtain SSI benefits, without jeopardizing his defense to the bank fraud charges. He would have testified that he had met eligibility requirements whether or not the charged

bank fraud had occurred. Because this proposed testimony would have placed his bank fraud activities directly at issue, it does not support a need for separate trials. The district court did not abuse its discretion in denying the motion for a severance.

### Discovery Violations

To establish a violation of a defendant's due process rights under Brady v. Maryland, 373 U.S. 83 (1963), there must be a showing that

> the prosecution suppressed the evidence, the evidence would have been favorable to the accused, and the suppressed evidence was material. Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different, i.e., when the Government's evidentiary suppression undermines confidence in the outcome of the trial. In determining whether [the defendant] has satisfied these requirements, the court views the undisclosed evidence in relation to the record as a whole, as the materiality of exculpatory evidence will vary with the overall strength of the government's case.

Moore v. Reynolds, 153 F.3d 1086, 1112 (10th Cir. 1998), cert. denied, 1999 WL 25232 (U.S. Mar. 22, 1999). We review Brady claims de novo. See Newsted v. Gibson, 158 F.3d 1085, 1094 (10th Cir. 1998), petition for cert. filed, (U.S. Mar. 15, 1999) (No. 98-8597).

Powell requested records from an F.B.I. investigation into a check-kiting scheme carried out by a group of individuals which included Powell's son. The district court ordered production of any evidence that overlapped with the investigation into the charges against Powell, but refused to order disclosure of

information that did not relate to the investigation of Powell. In compliance with the order, the government produced one item--a check drawn on the account of an individual named Malcolm Green. The Green check had been deposited into the son's account; other Green checks had been deposited into Powell's account.

Powell asserts that production of the entire F.B.I. file on the check-kiting scheme would have bolstered his defense that other individuals had deposited uncollectible checks into the bank accounts, in that his son was a proposed alternative suspect. This argument is simply too speculative to establish a reasonable probability of a different outcome. Considering the allegedly suppressed evidence in light of the record as a whole, we conclude that the government did not fail to disclose known, favorable evidence rising to a material level of importance. We reject Powell's Brady claim.

### Evidentiary Rulings

"We review the admission of evidence at trial for abuse of discretion. However, even if the trial court erroneously admits evidence, such error does not require reversal if it was harmless." United States v. Wittgenstein, 163 F.3d 1164, 1172 (10th Cir. 1998) (citations omitted). Evidence of prior uncharged misconduct, or bad character evidence, is properly admitted under Rule 404(b) if: (1) it is offered for a proper purpose under the Rule; (2) it is relevant; (3) the trial court makes a Rule 403 assessment that the probative value of the evidence is not

substantially outweighed by its potential for unfair prejudice; and (4) the trial court, upon request, instructs the jury that the evidence is to be considered only for the proper purpose for which it was admitted. See Huddleston v. United States, 485 U.S. 681, 691-92 (1988). [2]

"Evidence admissible for one of the purposes specified in Fed. R. Evid. 404(b) and *res gestae* evidence are not always separated by a bright line." United States v. Kimball, 73 F.3d 269, 272 (10th Cir. 1995). Evidence of other bad acts "should not be suppressed when those facts come in as *res gestae* –'as part and parcel of the proof of the offense [ ] charged in the indictment.'" Id. (quoting United States v. Gano, 560 F.2d 990, 993 (10th Cir.1977)).

Powell argues that the district court abused its discretion in admitting numerous invalid checks into evidence at trial, because these checks constituted

---

[2]    Rule 404(b) provides:

(b) **Other crimes, wrongs, or acts**. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

evidence of other crimes, wrongs or acts prohibited under Rule 404(b). This argument must be placed in the context of the bank fraud counts of the indictment, which alleged a scheme of depositing stolen checks and checks drawn on closed accounts into Powell's bank accounts during the period from February 1992 through June 1994.

A review of the record reveals that some of the contested exhibits were admitted as part of the "res gestae" of the charged offenses. Others were admitted under Fed. R. Evid. P. 404(b) to show identity, absence of mistake, plan, or knowledge. For each exhibit, the district court made an explicit ruling with an explanation of its rationale and, if necessary, gave an appropriate limiting instruction. We find no abuse of discretion in the district court's evidentiary rulings.

**Calculating Loss for Sentencing Purposes Under U.S.S.G. § 2F1.1**

Section 2F1.1, the sentencing guideline for offenses involving fraud and deceit, increases the base offense level for a fraud offense to account for the loss caused by defendant. "We review the district court's findings determination of a U.S.S.G. § 2F1.1 loss under the clearly erroneous standard, but we review the factors the court may properly consider de novo." United States v. Moore, 55 F.3d 1500, 1501 (10th Cir. 1995). "[L]oss need not be determined with precision.

-10-

The court need only make a reasonable estimate of the loss, given the available information." U.S.S.G. § 2F1.1, comment (n.9).

Powell argues that the district court miscalculated the loss to his victims by including the amount he received in SSI benefits and Medicaid, because he would have been entitled to these benefits in spite of the money received from his bank fraud offenses. After reviewing the record, we conclude that the district court's inclusion of these amounts in the loss calculation was not unreasonable and thus, not clearly erroneous.

## CONCLUSION

Appellant's motion to supplement the record is GRANTED. The judgment of the United States District Court for the District of Colorado is AFFIRMED.

Entered for the Court

James E. Barrett
Senior Circuit Judge