**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 17 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARIO DIAZ,

Defendant - Appellant.

No. No. 97-4151

(D. Utah)

(D.C. No. 96-CR-141)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON**, **MAGILL**[**], and **KELLY**, Circuit Judges.

---

Mario Diaz appeals the district court's denial of his motion to suppress

evidence obtained through a telephone wiretap. We affirm.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]Honorable Frank J. Magill, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

## BACKGROUND

This case arises out of an investigation of a narcotics distribution organization. In March 1995, the United States Customs Service reported to the Salt Lake County Special Investigations Unit that it had experienced an armed confrontation at the Mexican border involving a vehicle registered in Utah. As a result, a joint federal and state criminal investigation was initiated, focusing on a residence in West Valley City, Utah. After several other investigative procedures failed to reveal the scope of the criminal organization and the identity of all its participants, the state government applied for a state order authorizing the interception of telephone communications on a telephone located at the target residence.

In a thirty-nine page affidavit supporting the application, the government noted difficulties it had experienced with investigative techniques such as visual surveillance and pen registers and enumerated reasons, discussed below, why other normal investigative techniques would be unlikely to succeed if tried. Based on that affidavit, a Utah state court issued an order in October 1995 authorizing the wiretap. In November 1995, investigators intercepted a series of conversations involving Mr. Diaz and implicating him in the conspiracy.

As a result of these interceptions and evidence developed from them, Mr. Diaz was eventually charged in a one-count indictment with possession with

intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), 846 and 18 U.S.C. § 2. Prior to trial, Mr. Diaz moved to suppress all evidence obtained through the use of the wiretap. After a hearing, the magistrate judge entered a Report and Recommendation that the motion be denied. Over Mr. Diaz's objection, the district court adopted the magistrate judge's ruling and denied the motion to suppress. Mr. Diaz then pleaded guilty pursuant to Fed. R. Crim. P. 11(a)(2), reserving the right to appeal the district court's denial of his motion to suppress. He was subsequently sentenced to 46 months' imprisonment, followed by 36 months' supervised release, and ordered to pay a fine of $7000 and a victim assessment fee of $100.

Mr. Diaz now contends that the district court erred in denying his motion to suppress because the affidavit supporting the government's application contained only nonspecific assertions of the inadequacy of normal investigative techniques and thus failed to satisfy the "necessity requirement" for a wiretap.

**DISCUSSION**

"On appeal from a motion to suppress, we accept the district court's factual findings unless clearly erroneous, review questions of law de novo, and view the evidence in the light most favorable to the prevailing party." United States v. Edwards, 69 F.3d 419, 428 (10th Cir. 1995). We review de novo whether the

order complies with the necessity requirement. <u>United States v. Castillo-Garcia</u>, 117 F.3d 1179, 1186 (10th Cir. 1997). However, a wiretap authorization order is presumed proper, and the defendant, Mr. Diaz, carries the burden of overcoming this presumption. <u>Edwards</u>, 69 F.3d at 429.

Although the wiretap in question was obtained pursuant to Utah Code Ann. § 77-23a-10, Utah law conforms substantially to the requirements of 18 U.S.C. § 2518, the federal statute outlining the procedures for obtaining a wiretap. We apply federal standards to determine whether the evidence derived from the interceptions is admissible. <u>United States v. Quintana</u>, 70 F.3d 1167, 1169 (10th Cir. 1995).

Among other provisions, the government must make a full and complete showing that a wiretap is necessary. Under this "necessity requirement," each wiretap application must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). In addition, the judge authorizing the wiretap must find, based on the facts submitted by the applicant, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c).

With these guidelines in mind and after reviewing the affidavit in support of the government's wiretap application, we believe that the government's wiretap application complied with 18 U.S.C. § 2518(1)(c), as well as Utah Code Ann. § 77-23a-10(1)(c). The affidavit supporting the application outlined the investigative procedures that had been used, explained why other methods were unlikely to succeed and, in our view, demonstrated the need for wiretapping.

## A.  Standard Visual or Aural Surveillance

The affidavit first explained that investigators had attempted both video and visual surveillance. See Affidavit, R. Vol. I, Doc. 33, Ex. A ¶¶ 12-13. Although this surveillance offered some limited success and revealed approximately 160 incidents of a suspicious nature, the affidavit also described at least two instances where suspects showed an awareness of potential surveillance. In one instance, a suspect carefully looked up and down the street before placing bags in the trunk of his car, and in the second instance, another suspect used evasive driving tactics and "appeared to be watching to see if anyone was following him." Id. ¶¶ 13A, 14. As a result of this apparent surveillance consciousness, the affidavit concluded that "investigators are hesitant to conduct a more active surveillance . . . for fear of being detected by the suspects." Id. ¶ 21.

## B. Telephone Surveillance

The affidavit also revealed that on July 6, 1995, the government obtained an order for a pen register and trap and trace for the target residence's telephone number. Id. ¶ 17. Information obtained in this manner indicated a high volume of short telephone calls, as well as frequent use of pay telephones and pagers—activity which is indicative of an ongoing criminal organization. Id. However, the affidavit explained that investigators' use of pen registers and long distance toll records had not provided sufficient evidence concerning the conspiracy because such methods are incapable of determining which individuals actually made and received the monitored calls, nor could the methods ascertain the nature of the calls. Id. ¶¶ 21, 25, 26.

## C. Confidential Informants

The affidavit indicated that informants had provided information relating only to a "small and localized segment of the organization," id. ¶ 22, and then explained that "given the insular nature of the organization," it is unlikely that informants will ever be in a position to obtain the information necessary to identify the full scope and extent of the criminal activities or to identify all those individuals involved in the drug trafficking. Id. ¶ 23. It also explained that the careful and suspicious natures of the suspects made it unwise for informants to

attempt further penetration of the organization, and indicated that even if further penetration were possible, such informants may not have agreed to testify. Id.[1]

## D. Search Warrants

Next, the affidavit indicated that investigators had not attempted to obtain or execute search warrants for the target residence because the suspects stored large quantities of narcotics and sale proceeds in "safe houses" throughout the Salt Lake City area, and the present investigation had not sufficiently identified all the safe houses used by the organization. Id. ¶ 29. In addition, the affidavit stated that, based on the affiant's experience, "the use of search warrants would not provide the evidence necessary to determine the full scope and extent of the criminal enterprises and the methods utilized by the suspects." Id.

---

[1]Although he concedes that confidential informants had been used in a prior investigation involving this same residence, Mr. Diaz argues that investigators never used confidential informants in this most recent investigation. Thus, Mr. Diaz argues, the magistrate judge erred by stating in his Report and Recommendation that confidential informants had in fact been used in this investigation. Appellant's Br. at 32. Although the affidavit is somewhat unclear on this point, and thus Mr. Diaz may be correct, the government is not required to exhaust all methods before seeking a wiretap authorization. See United States v. Nunez, 877 F.2d 1470, 1472 (10th Cir. 1989) (stating that the "necessity" requirement should be read in a common sense fashion, and that it is not necessary to exhaust every other possible means of investigation). It is sufficient that the affidavit at issue here explained, in the alternative, why this method was likely to fail or was too dangerous. See 18 U.S.C. § 2518(1)(c). Thus, any error in the magistrate judge's statement is harmless.

**E. General Questioning or Interrogation under an Immunity Grant**

The affidavit explained that investigators had also not attempted interviews and immunity because there are "presently no known individuals with full knowledge of the entire scope of the criminal activity who are not themselves targets of the investigation." Id. ¶ 28. Therefore, the affidavit explained, "[o]ffering immunity from prosecution or interviewing witnesses would not result in the accumulation of evidence sufficient to uncover the full scope and extent of the offenses committed by this organization." Id.

**F. Undercover Activities**

Finally, the affidavit disclosed that although investigators had attempted to do so, it had not been possible to "successfully introduce any undercover officers into the organization." Id. ¶ 24. It then explained that future attempts are not likely to be successful because the informants who have cooperated in the past are not sufficiently trusted within the organization to successfully introduce undercover officers at a level that would result in valuable information. The government also asserted that undercover operations are dangerous, expensive, and time-consuming, and explained that further efforts would risk jeopardizing the entire investigation as well as endangering the lives of the officers involved. Id.

Based on the above discussion, we believe that the explanations in the affidavit comprise "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). Moreover, we acknowledge that the state court issuing the wiretap order fulfilled its obligation under both 18 U.S.C. § 2518(3)(c), as well as Utah Code Ann. § 77-23a-10(2)(c), and specifically found that this necessity requirement was satisfied. See Ex Parte Order, R. Vol. I, Doc. 33, Ex. B at 5.44-45. Thus, we conclude that Mr. Diaz has failed to overcome the presumption that the wiretap order is proper, and hold that the district court properly found that the government had satisfied the necessity requirement and did not err in denying Mr. Diaz's motion to suppress.

We recognize that in addition to challenging the government's affidavit, Mr. Diaz also challenges several of the magistrate judge's conclusions of law and fact. In particular, he challenges: (1) the magistrate judge's statement that wiretaps should not be "*routinely* employed when other methods would work as well" (emphasis added); (2) the magistrate judge's statement that the defendant bears the burden of rebutting the prosecution's showing of necessity; (3) the magistrate judge's statement regarding the length of the surveillance of the targeted residence; and (4) the magistrate judge's statement that the conspiracy

-9-

was moving and "multi-site." Appellant's Br. at 9-11, 31-32. However, because Mr. Diaz did not raise these specific issues in his objection to the magistrate judge's Report and Recommendation, see R. Vol. I, Docs. 43, 44, we do not address them. See United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996) (stating that general objections to a magistrate judge's ruling are insufficient to avoid application of the waiver rule as to specific issues); Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991) (stating that failure to object to the magistrate judge's factual findings and conclusions of law amounts to a waiver of challenge to those issues).

**CONCLUSION**

Accordingly, the judgment of the district court is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge