**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 8 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

VICTOR MEDINA DIAZ,

    Defendant-Appellant.

No. 97-4164
(D. Utah)
(D.Ct. No. 96-CR-136-01-C)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **McKAY, BRORBY**, and **MURPHY**, Circuit Judges.

_____

    This case involves the investigation of a narcotics distribution organization

based in Salt Lake City, Utah.  In March 1995, a vehicle with Utah license plates

was involved in an armed confrontation on the border between the United States

and Mexico.  The United States Customs Service reported the incident to law

enforcement officials in Salt Lake County.  Soon after, a joint federal and state

investigation was initiated, focusing on the home of the registered owner of the

_____

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel.  The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

vehicle. The investigation revealed the likely existence of a drug ring, but the investigators were unable to uncover the scope of the criminal organization.

Looking to break open the investigation, a detective in the Salt Lake County Sheriff's Office, Kevin Judd, filed a forty-four page affidavit in support of the investigators' application for a telephone tap. In the affidavit, Detective Judd established probable cause for the wiretap and explained why it was necessary due to the ineffectiveness of ordinary investigative techniques. In response to the application, a Utah state court issued a wiretap order. Investigators employed the wiretap and obtained evidence against Mr. Victor Diaz.

Ultimately, Mr. Diaz was charged in a one-count indictment with conspiracy to possess methamphetamine with intent to distribute, in violation of 21 U.S.C. § 846. Prior to trial, Mr. Diaz moved to suppress the wiretap evidence. After holding a hearing, a magistrate judge issued a Report and Recommendation that the motion be denied. Over Mr. Diaz' objection, the district court adopted the magistrate judge's findings and denied the motion. Mr. Diaz then entered a conditional plea of guilty reserving his right to appeal the district court's denial of his motion. *See* Fed. R. Crim. P. 11(a)(2). The district court sentenced Mr.

Diaz to the statutory minimum of 120 months in prison.

On appeal, Mr. Diaz contends the district court erred in finding the affidavit supporting the wiretap application satisfied the necessity requirement of 18 U.S.C. § 2518(1)(c).

"On appeal from a motion to suppress, we accept the district court's factual findings unless clearly erroneous, review questions of law *de novo*, and view the evidence in the light most favorable to the prevailing party." *United States v. Edwards*, 69 F.3d 419, 428 (10th Cir. 1995) (citing *United States v. Williamson*, 1 F.3d 1134, 1135 (10th Cir. 1993)), *cert. denied*, 517 U.S. 1243 (1996). Whether the court's order authorizing interception of wire, oral, or electronic communications complies with the "necessity" requirement is a question of law we review *de novo*. *See United States v. Castillo-Garcia*, 117 F.3d 1179, 1186 (10th Cir.), *cert. denied*, 118 S. Ct. 395 and 118 S. Ct. 428 (1997). The defendant bears the burden of overcoming our presumption the wiretap authorization was proper. *Edwards*, 69 F.3d at 429.

The wiretap authorization challenged by Mr. Diaz was obtained pursuant to Utah law. *See* Utah Code Ann. § 77-23a-10. However, we must apply the federal

standard, found at 18 U.S.C. § 2518, to determine whether evidence obtained from a wiretap is admissible in federal court. *See United States v. Quintana*, 70 F.3d 1167, 1169 (10th Cir. 1995). Utah's wiretap statute is similar in all material aspects to the federal wiretap statute. *Compare with* 18 U.S.C. § 2518.

Section 2518 requires, in part, that the applicant for a wiretap make a full and complete statement concerning why it is necessary. 18 U.S.C. § 2518(1)(c). To do this, the applicant must explain "whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Id.* The judge granting the applicant's request must make a finding that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c).

We have held:

If any of the four categories of normal investigative techniques ... have not been tried, the government must explain with particularity why each of such untried techniques would be either unsuccessful or too dangerous. Those investigative procedures are: (1) standard visual and aural surveillance; (2) questioning and interrogation of witnesses or participants (including the use of grand juries and the grant of immunity if necessary); (3) use of search warrants; and (4) infiltration of conspiratorial groups by undercover agents or informants. In addition, if other normal investigative techniques such as pen registers or trap and trace devices have not been tried, a

-4-

similar explanation must be offered as to why they also would be unsuccessful or too dangerous.

*Castillo-Garcia*, 117 F.3d at 1187. We require that the statements supporting a wiretap application "be factual in nature and they must specifically relate to the individuals targeted by the wiretap." *Id.* at 1188. As mentioned above, Mr. Diaz' contends the affidavit supporting the wiretap application did not satisfy this necessity requirement.[1]

**Standard visual or aural surveillance**

The affidavit explains that "[b]ecause of the surveillance consciousness of the conspirators, investigators are hesitant to conduct a more active surveillance than is described ... for fear of being detected by the suspects." It also asserts surveillance would provide insufficient evidence to prove the purpose of meetings among the suspects. The affidavit states that because the suspects are extremely cautious, extended surveillance would result in discovery of the investigators. In support of this point, the affidavit notes: "[The suspects] closely monitor their

---

[1] Mr. Diaz argues that because many factual gaps exist in the affidavit, it fails to explain what was happening in the investigation during long periods of time. No doubt time, space, and relevancy concerns lead Detective Judd to limit the content of his affidavit. We can only assume he included all the information he believed to be pertinent. Absent evidence of specific facts that significantly undercut the assertions made in the affidavit, we will base our decision on what the affidavit contains, rather than what it does not contain.

automobile mirrors and frequently look out of their windows, both at home and while in their automobiles, to ascertain if there are any suspicious persons or vehicles in the area." In one instance, investigators noticed they were being followed by a suspected member of the organization while they were following a suspect. In another instance, a suspect managed to lose his surveillance after driving evasively and constantly checking his rear-view mirror.

Mr. Diaz specifically challenges the sufficiency of the affidavit as it relates to this category of investigative technique. He suggests the investigators failed to establish why visual surveillance would not have worked just as well as a wiretap in this case. We disagree. The affidavit explains that some surveillance had been tried, but it was clear the suspects were on the look-out. The claims in the affidavit are not defeated just because the investigators occasionally were able to track the suspects.[2]

---

[2] Along this line, Mr. Diaz essentially argues this investigation was going so well a wiretap was unnecessary. To prove his point, he refers the court to the evidence resulting from the several-year-old investigation disclosed in the affidavit. The government characterizes its progress at the time this application was made as being composed of many insights, but not a complete picture. We are not persuaded by a review of the affidavit that the investigators had their case close to completion. Although the affidavit demonstrates the investigators had been making progress (in part from other wiretaps), it specifically identifies the information sought by investigators and relates why a wiretap is necessary to obtain that information.

**Questioning or interrogation under an immunity grant**

The affidavit explains that there were "no known individuals with full knowledge of the entire scope of the criminal activity who are not themselves targets of th[e] investigation." Therefore, "[o]ffering immunity from prosecution or interviewing witnesses would not result in the accumulation of evidence sufficient to uncover the full scope and extent of the offenses committed by th[e] organization." The affidavit mentions that investigators have interviewed "several people" who know the suspects, and they have not found anyone with information concerning the suspects' suppliers or how the suspects smuggle the drugs into the country. According to the affidavit, "[o]nly those individuals integrally involved in the organization at a high level possess the requisite information."

**Search warrants**

The affidavit explains that "the use of search warrants would not provide the evidence necessary to determine the full scope and extent of the criminal enterprises" of the suspects because they "store large quantities of narcotics and the proceeds derived from narcotics sales in 'safe houses.'" The investigators had not located all the safe houses. The investigators hoped to locate the safe houses through the wiretap.

**Undercover activities and confidential informants**

The affidavit discloses that unsuccessful attempts had been made to introduce undercover officers into the organization and that future attempts might jeopardize the investigation. It also states that the informants the investigators have within the organization were not trusted enough by the suspects to successfully introduce an undercover officer at a significant level of the operation. The affidavit explains that no future attempts to introduce an undercover officer into the organization were planned because it was considered too dangerous and because it would be too difficult to "infiltrate the conspiracy at a level high enough to identify all members of the conspiracy or otherwise satisfy all the goals of this organization." Furthermore, three of the four suspects described in the affidavit are members of the Diaz family, suggesting the conspiracy may have been especially difficult to penetrate with outsiders.

Mr. Diaz challenges the assessment in the affidavit that infiltration would be too dangerous. It is true, as Mr. Diaz notes, the affidavit does not mention the use of guns beyond its recitation of the border confrontation and the firearms conviction of one of the suspects. However, it is clear from the affidavit that the investigators were dealing with a conspiracy involving persons who were willing to face down United States Customs Agents with automatic weapons. Detective

Judd thought the danger from these suspects was serious enough to swear to it in the affidavit. We do not think this danger was too far removed to justify the statements in the application.

The affidavit indicates that informants had only been able to relate information concerning "a small and localized segment of the organization." It explained that "given the insular nature of the organization," it is unlikely that informants will ever be able "to provide the requisite information necessary to identify all those individuals who are directing and controlling the drug trafficking activities of the organization." It also explained that the investigators had not encouraged any informants to attempt to penetrate deeper into the organization because of the "careful and suspicious nature" of the suspects. Furthermore, the affidavit indicates that the available confidential informants would not, on their own, be sufficient for a successful prosecution.

Mr. Diaz argues the explanation of confidential informants as it relates to the necessity requirement is perfunctory. We disagree. A full discussion of the background and reliability of each informant is not required. Furthermore, we see no reason to require the attempted use of informants as to each new suspect, as Mr. Diaz seems to suggest. We agree with the magistrate judge: "It cannot be

said that there is any indication, given the insular nature of the trafficking, that informants could provide additional information as to the scope of the conspiracy.... The conclusion as to informant information likely being ineffective is reasonable given the totality of the facts in the affidavit."

**Pen registers and trap and trace devices**

The affidavit reveals the investigators obtained the toll records of all calls placed from the target phone number. In addition, according to the affidavit, pen registers and trap and trace devices were used on the target phone number. The affidavit explains that use of these techniques exposed "patterns indicative of narcotics trafficking by the targets." However, according to affidavit, they failed to provide necessary information, like who is making and receiving the calls, and what is being discussed. Furthermore, the affidavit states the investigators are "incapable of identifying specific shipments of narcotics" using these techniques.

Recently, this court decided a similar appeal brought by Mr. Diaz's brother, one of his co-defendants.[3] *See United States v. Diaz*, No. 97-4151, 1998 WL 380935 (10th Cir. Jun. 17, 1998). Although that case involved a different wiretap

---

[3] The wiretap application in the co-defendant's case was reviewed by the same state judge as the one in this case.

application, and, as such, it does not control, it did involve the same investigation. The affidavit's statements in that case are the same as the affidavit's statement in this case in every material aspect. *Id.* at *2-3. We ruled in that case Mr. Diaz's brother failed to overcome the presumption that the wiretap order was proper. *Id.* at *4.

We believe that assessment applies to this case as well. The discussion provided in the affidavit concerning each of the ordinary investigative techniques comprises "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). The government is not required to exhaust all conceivable investigative methods before resorting to a wiretap. *See Castillo-Garcia*, 117 F.3d at1187-88. Mr. Diaz did not overcome the presumption that the wiretap is proper.

Accordingly, the judgment of the district court is **AFFIRMED**.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge

-11-