**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 29 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

BRENT EUGENE VANMETER,

    Defendant-Appellant.

No. 00-6456

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. CR-00-67-T)**

---

Submitted on the briefs.[*]

Daniel G. Webber, Jr., United States Attorney, Arlene Joplin, Assistant United States Attorney, and Jerome A. Holmes, Assistant United States Attorney, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

Mack K. Martin and J. David Ogle of Martin Law Office, Oklahoma City, Oklahoma, for Defendant-Appellant.

---

Before **LUCERO**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case was therefore ordered submitted without oral argument on September 19, 2001.

**ROGERS**,[**] District Judge.

_____

**BRORBY**, Senior Circuit Judge.

_____

A jury convicted Brent Eugene VanMeter, the defendant, of accepting a bribe in violation of 18 U.S.C. § 666. On appeal, Mr. VanMeter asserts the following: (1) the trial court should have suppressed wiretap communications obtained pursuant to a court order that included unlawful references to offenses not subject to wiretap investigation; (2) government agents violated the "necessity" requirement of the federal wiretapping statute; (3) the government violated the nondisclosure requirement of the federal wiretapping statute; (4) there was insufficient evidence the bribe in question was related to Oklahoma State Department of Health official business to sustain a conviction; and (5) the trial court erroneously increased the sentence for supervising another participant in the criminal scheme. Our jurisdiction arises pursuant to 28 U.S.C. § 1291. After a careful review of each issue, we affirm.

_____

[**] The Honorable Richard D. Rogers, United States District Judge for the District of Kansas, sitting by designation.

## BACKGROUND

The federal Health Care Finance Administration requires nursing homes to maintain certain minimum standards and undergo federally mandated inspections to be eligible for Medicare or Medicaid payment. In Oklahoma, the federal Health Care Finance Administration has delegated enforcement of these regulations to the Oklahoma State Department of Health. Mr. VanMeter, a Deputy Commissioner of the Oklahoma State Department of Health, was responsible for overseeing Oklahoma's nursing homes, including closing down poorly preforming facilities. In 1996 the Medicaid Fraud Unit of the office of the Oklahoma Attorney General and the Federal Bureau of Investigation (FBI) began an investigation of corruption in the Oklahoma State Department of Health and in particular of Mr. VanMeter. Using a variety of conventional investigation techniques, investigators unearthed numerous leads, but were unable to discover the full extent of corruption. Investigative techniques that produced partial success included: visual surveillance at locations associated with the principal suspects; the questioning and consensual telephone monitoring of six confidential informants; witness interviews; pen registers; and toll records. Officials came to suspect Mr. VanMeter was soliciting bribes, offering favored treatment to some

care providers, and engaging in schemes to "trade" nursing home patients.[1]

In order to complete the investigation, federal agents sought to obtain permission to intercept telephone calls of Mr. VanMeter and other suspects. Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 U.S.C. § 2510-22 (1994 & Supp. 2000), sets out an application procedure for federal investigators seeking permission to wiretap crime suspects. *United States v. Castillo-Garcia*, 117 F.3d 1179, 1184 (10th Cir.), *cert. denied*, 522 U.S. 962, 522 U.S. 974 (1997). Agents must first obtain approval from the Attorney General or a specially designated Assistant Attorney General. *Id.* at 1184-85. Then, a judge of competent jurisdiction must approve an application submitted by investigators. *Id.* at 1185. Judges may only authorize wiretaps where statutory requirements are met, including a showing the wiretap is "necessary" to investigate a serious offense enumerated on a statutory list. *Id.*; 18 U.S.C. § 2516. Also, Title III forbids disclosure of intercepted communications except under limited exceptions. 18 U.S.C. § 2517.

---

[1] Nursing homes have a strong financial incentive to maintain high resident occupancy. Patient "trading" involves moving nursing home patients to a facility based on the financial interests of the operator, rather than the health interests and personal choice of the patients.

On March 9, 2000 the FBI obtained a memo from a specially designated Assistant Attorney General approving a court application for authorization to wiretap suspects' telephones. This memo and subsequent application materials included lists of suspected offenses, one of which was not enumerated in the statute as subject to wiretap investigation.[2] The wiretap application incorrectly characterized this non-enumerated offense as enumerated. The application included a forty-page FBI agent's affidavit detailing previous investigation efforts and explaining why normal investigative techniques were unlikely to succeed or would jeopardize the investigation. The affidavit explained visual surveillance could only partially succeed, since agents needed to know the subject matter of conversations to prove the suspects' corruption. The agent believed potential witnesses were unlikely to cooperate because they feared retaliation from Mr. VanMeter and other insiders, even under grand jury subpoena. The agent explained search warrants and banking document subpoenas were unlikely to uncover direct evidence of corruption and would alert suspects to the investigation. Also, the agent explained suspected nursing home operators and government officials were a close-knit group, making infiltration of undercover

---

[2] This offense was 42 U.S.C. § 1320 (proscribing fraud related to federal health care programs). 42 U.S.C. § 1320a-7b is not included in the list of offenses subject to wiretap investigation. 18 U.S.C. § 2516.

agents or confidential informants difficult and unlikely to succeed. Finally, the

agent placed these investigation difficulties against the backdrop of continuing

health risks to nursing home patients from dangerous patient "trading." The

district court approved the application and issued an order authorizing

communication interceptions to investigate three offenses enumerated on the

statutory list for a period of thirty days.[3]

At the end of the thirty days, the Special Assistant Attorney General issued

another memo authorizing agents to seek an extension of the wiretap order for an

additional thirty days. A subsequent application requested permission to wiretap

in investigation of nine offenses, two of which were not included on the statutory

list of offenses subject to wiretapping.[4] Moreover, the application incorrectly

---

[3] These three offenses were 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 1951 (interference with commerce by threats or violence), and 18 U.S.C. § 1952 (interstate and foreign travel or transportation in aid of racketeering enterprises). Sections 1951 and 1952 are both explicitly enumerated as subject to wiretap investigation. 18 U.S.C. § 2516(1)(c). However, Title III does not mention 18 U.S.C. § 371 (conspiracy) by section number in its enumerated list. 18 U.S.C. § 2516. Nevertheless, the list does allow wiretapping to investigate "any conspiracy to commit any offense" elsewhere enumerated in the statute, thereby arguably including 18 U.S.C. § 371. 18 U.S.C. § 2516(1)(p).

[4] These two non-enumerated offenses were 42 U.S.C. § 1320 (fraud relating to health care programs), and 18 U.S.C. § 1518 (obstruction of criminal investigation of health care offenses). 18 U.S.C. § 2516.

-6-

characterized these two non-enumerated offenses as enumerated. The application materials for the wiretap extension also included a second affidavit from the FBI agent. This fifty-three-page affidavit explained the progress of the investigation and the continuing need for wiretap authorization. The district court approved the extension and issued another order authorizing interception to investigate the same three enumerated offenses as the previous order.

On April 17, 2000, federal agents intercepted a telephone call between Mr. VanMeter and Robert James Smart, the owner of a business operating several Oklahoma nursing homes. During the telephone call Mr. Smart explained his nursing home business had lost about $50,000 in revenue from its business decision to certify its facilities for payment under both the Medicare and Medicaid systems during the previous year. Mr. Smart suggested that Mr. VanMeter falsify government records by planting a backdated letter into government files. This would allow Mr. Smart's company to fraudulently collect payment for medical services from the government. Mr. VanMeter agreed to the arrangement in exchange for "two percent."

Mr. VanMeter and Mr. Smart proceeded to enlist the help of Richard Pralle, one of Mr. Smart's employees, to perpetrate their deceit. After consulting with

Mr. VanMeter on the demeanor and approach Mr. Pralle should use, Mr. Smart instructed Mr. Pralle to prepare a letter falsely backdated to May 7, 1999. Mr. VanMeter spoke directly with Mr. Pralle about how to explain to Oklahoma State Department of Health officials why the fraudulently backdated letter was not present in government files. When federal Health Care Finance Administration officials asked for further details about the fraudulent May 7, 1999 letter, Mr. VanMeter directed Mr. Pralle over the telephone to prepare additional letters corroborating the backdated letter. In an intercepted telephone call on April 28, 2000, Mr. Pralle read another proposed fraudulent letter to Mr. VanMeter in order to obtain advice and approval of its contents. Throughout, Mr. VanMeter instructed Mr. Pralle, either directly or through others, about what to say and write in order to conceal their plot.

Later, federal agents followed Mr. VanMeter to a meeting with Mr. Smart, where Mr. Smart delivered money to Mr. VanMeter. Following the meeting, Mr. VanMeter went to a legal gambling operation where federal agents observed him placing bets. The FBI arrested both Mr. VanMeter and Mr. Smart later that day. In a criminal complaint attempting to show probable cause for these arrests, an FBI agent included an affidavit reprinting incriminating quotes from the April 17, 2000 telephone conversation. After a pre-trial hearing, the district court denied

motions from Mr. Smart and Mr. VanMeter to suppress tape recordings of the incriminating telephone conversations based on violations of the federal wiretapping statute. The defendants argued the court wiretap authorizations were procedurally flawed, the wiretaps were not "necessary," and inclusion of intercepted quotes in the criminal complaint improperly disclosed confidential information. At a joint trial, a jury convicted both men of violating 18 U.S.C. § 666 (theft or bribery concerning programs receiving federal funds). During sentencing, the district court applied a two-level upward adjustment to the sentencing guidelines premised upon Mr. VanMeter's management and supervision of Mr. Pralle. The district court sentenced Mr. VanMeter to thirty-six months in prison and fined him $50,000. This appeal followed.

## DISCUSSION

### I.

Mr. VanMeter argues the wiretap application materials and orders allowed "interception to be undertaken under the authority of Title III for non-enumerated offenses," thereby rendering those orders invalid. In particular, Mr. VanMeter concludes references in wiretap application materials and orders to crimes not enumerated in 18 U.S.C. § 2516 justify suppression of evidence obtained from the wiretaps. We find this argument unpersuasive. Pursuant to Rule 28(i) of the

Federal Rules of Appellate Procedure, Mr. VanMeter joined in the brief of his co-defendant at trial, Mr. Smart. On this issue, Mr. VanMeter's and Mr. Smart's legal positions are substantively the same. For the sake of judicial efficiency, we refer the parties to this court's reasoning in an opinion affirming Mr. Smart's conviction in case No. 00-6458. *See United States v. Smart*, ___ F.2d ___ (10th Cir. Jan. 29, 2002).

## II.

Next, Mr. VanMeter argues the district court should have suppressed the wiretap evidence because the government failed to "prove that normal or conventional investigative techniques had been tried and failed or reasonably appeared to be unlikely to succeed." The government counters "[t]he sheer quantity of facts that the United States marshaled in support of its necessity showing speaks to its adequacy." The district court agreed "the record reflects that the necessity requirements for a Title III wiretap were satisfied."

Two recent opinions in this circuit have noted confusion over the appropriate standard of review for determinations of "necessity," and then affirmed under either possible standard. *United States v. Mitchell*, 274 F.3d 1307 (10th Cir. Oct. 23, 2001) (ordered published Dec. 11, 2001); *United States v.*

*Garcia*, 232 F.3d 1309, 1312-13 (10th Cir. 2000).  In *United States v.*

*Armendariz*, 922 F.2d 602 (10th Cir.), *cert. denied*, 502 U.S. 823 (1991), we

quoted the Ninth Circuit standard:  "'Although we examine de novo whether 'a

full and complete statement' was submitted meeting section 2518(1)(c)'s

requirements, we review the conclusion that the wiretap [was] necessary in each

situation for an abuse of discretion.'"  *Id.* at 608 (quoting *United States v. Brown*,

761 F.2d 1272, 1275 (9th Cir. 1985)).  However, after *Armendariz*, every Tenth

Circuit case has applied de novo review, or affirmed without specifying a

standard.[5]  Although we follow an earlier, settled precedent over a subsequent

---

[5]  Our precedent has consistently employed de novo review of the "necessity" requirement.  *United States v. Iiland*, 254 F.3d 1264, 1268 (10th Cir. 2001) ("The question of whether the government demonstrated sufficient 'necessity' ... to support the issuance of a wiretapping order is a question of law which we review *de novo*.");  *Castillo-Garcia*, 117 F.3d at 1186 ("The question of whether the government demonstrated sufficient 'necessity' under 18 U.S.C. § 2518(1)(c) (1994) to support the issuance of a wiretapping order is a question of law which we review *de novo*."), *cert. denied*, 522 U.S. 962, 522 U.S. 974 (1997); *United States v. Killingsworth*, 117 F.3d 1159, 1163-64 (10th Cir. 1997) ("We review *de novo* whether the necessity requirement was met."); *United States v. Quintana*, 70 F.3d 1167, 1169 (10th Cir 1995) ("We review de novo whether the § 2518(1)(c) necessity requirement was met."); *United States v. Edwards*, 69 F.3d 419, 429 (10th Cir. 1995) ("We review de novo whether the order complies with the necessity requirement."), *cert. denied*, 517 U.S. 1243 (1996); *United States v. Mondragon*, 52 F.3d 291, 292 (10th Cir. 1995) ("We review de novo whether the necessity requirement was met."); *United States v. Williams*, 45 F.3d 1481, 1484 (10th Cir. 1995) ("The validity of a wiretap order, however, is a conclusion of law which is reviewed de novo.").  Our unpublished dispositions have similarly relied on *de novo* review.  *United States v. Arrington*, 216 F.3d 1088, 2000 WL 775576 (10th Cir. June 16, 2000) ("The question of whether the government demonstrated sufficient "necessity" under 18 U.S.C. § 2518(1)(c) (1994) to support issuance of

derivation, *Haynes v. Williams*, 88 F.3d 898, 900 n.4 (10th Cir. 1996), the *Armendariz* standard cannot be described as "settled." We can find no Tenth Circuit case, aside from *Armendariz*, that has ever reviewed the "necessity" question for abuse of discretion.

Conversely, in *Castillo-Garcia*, we developed a predictable procedure for employing *de novo* review. 117 F.3d 1179 at 1186-88. *De novo* review under the *Castillo-Garcia* framework is consistent with our prior, settled commitment to "commonsense" review of wiretap authorizations. *United States v. Nunez*, 877 F.2d 1470, 1472 (10th Cir.), *cert. denied*, 493 U.S. 981 (1989). Therefore, absent en banc reconsideration or superseding Supreme Court precedent,[6] our case law

---

a wiretap order is a question of law we review de novo."); *United States v. Victor Medina Diaz*, 161 F.3d 18, 1998 WL 614460 (10th Cir. Sept. 8, 1998) ("Whether the court's order authorizing interception of wire, oral, or electronic communications complies with the "necessity" requirement is a question of law we review *de novo*."); *United States v. Mario Diaz*, 153 F.3d 728, 1998 WL 380935 (10th Cir. Jun. 17, 1998) ("We review de novo whether the order complies with the necessity requirement."); *United States v. Bovie*, 120 F.3d 271, 1997 WL 423114 (10th Cir. Jul. 29, 1997) ("Whether the government demonstrated sufficient 'necessity' under 18 U.S.C. § 2518(1)(c) (1994) to support issuance of a wiretapping order is a question of law we review *de novo*.").

[6] Disagreement predominates in our sister circuits over the appropriate standard of review for determinations of "necessity" under 18 U.S.C. § 2518(1)(c) and (3)(c). The First and Second Circuits review whether "minimally adequate" facts support the district court's determination. *United States v. Scibelli*, 549 F.2d 222, 226 (1st Cir.), *cert. denied*, 431 U.S. 960 (1977); *United States v. Miller*, 116 F.3d 641, 663 (2d Cir. 1997), *cert. denied*, 524 U.S. 905 (1998). The

compels us to review the "question of whether the government demonstrated sufficient 'necessity' to support the issuance of a wiretapping order ... *de novo*." *Iiland*, 254 F.3d at 1268 (alteration and citation omitted).

This clarification of the standard of review for the "necessity" requirement does not change our other settled standards. We still accept the district court's factual findings unless clearly erroneous and view evidence in the light most favorable to the prevailing party. *Iiland*, 254 F.3d at 1268. Moreover, on appeal

---

Third and Ninth Circuits review *de novo* whether a full and complete statement was made in the application and review the district court's determination of necessity for an abuse of discretion. *United States v. Phillips*, 959 F.2d 1187, 1189 (3d Cir.), *cert. denied*, 506 U.S. 987 (1992); *United States v. Brown*, 761 F.2d 1272, 1276 (9th Cir. 1985). The Fourth Circuit has not yet chosen a standard of review, merely noting the government's burden of showing "necessity" is not great. *United States v. Smith*, 31 F.3d 1294, 1298 (4th Cir. 1994), *cert. denied*, 513 U.S. 1181 (1995). The Fifth Circuit appears to have conflicting authority. *Compare United States v. Kelley*, 140 F.3d 596, 604 (5th Cir.) (reviewing for clear error), *cert. denied*, 525 U.S. 880, 525 U.S. 908 (1998) *with United States v. Bennett*, 219 F.3d 1117, 1121 (5th Cir.) (reviewing for abuse of discretion), *cert. denied*, 531 U.S. 1056, 531 U.S. 1153 (2000). The Sixth Circuit and the D.C. Circuit appear to review for abuse of discretion. *United States v. Corrado*, 227 F.3d 528, 539 (6th Cir. 2000); *United States v. Sobamowo*, 892 F.2d 90, 93 (D.C. Cir. 1989), *cert. denied*, 498 U.S. 825 (1990). The Seventh Circuit appears to affirm a district court's necessity determination if there is a "factual predicate" to support it. *United States v. Zambrana*, 841 F.2d 1320, 1330 (7th Cir. 1988). The Eighth Circuit and the Eleventh Circuit review for clear error. *United States v. Davis*, 882 F.2d 1334, 1343 (8th Cir. 1989), *cert. denied*, 494 U.S. 1027 (1990); *United States v. Green*, 40 F.3d 1167,1172-73 (11th Cir. 1994), *cert. denied*, 514 U.S. 1089, 515 U.S. 1110 (1995).

"a district court's wiretap authorization is presumed proper, and the defendant bears the burden of overcoming this presumption." *Killingsworth*, 117 F.3d at 1163.

Congress has required investigators to show the "necessity" of any wiretap application by providing "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). This section of the federal wiretap statute serves to insure that wiretapping is not used in situations where traditional investigative techniques would suffice to expose the crime. *United States v. Johnson*, 645 F.2d 865, 867 (10th Cir.), *cert. denied*, 454 U.S. 866 (1981). Our case law establishes normal investigative procedures subject to 18 U.S.C. § 2518(1)(c) include:

> (1) standard visual and aural surveillance; (2) questioning and interrogation of witnesses or participants (including the use of grand juries and the grant of immunity if necessary); (3) use of search warrants; and (4) infiltration of conspiratorial groups by undercover agents or informants.... We add pen registers and trap and trace devices to this list because they possess a logical relationship and close affinity to wiretaps and yet are less intrusive.

*Castillo-Garcia*, 117 F.3d at 1187-88.

In this case, federal agents used normal investigation procedures or reasonably explained why those procedures would fail or be too dangerous.

-14-

Agents conducted visual surveillance of Mr. VanMeter and other suspects at several locations. Investigators also explained that further visual observation would not establish the extortionate subject matter of conversations held in private locations or on the telephone. Agents conducted aural surveillance by obtaining the consent of confidential informants to listen to telephone conversations with suspects. To obtain the cooperation of these informants, federal agents questioned and interrogated witnesses and participants. However, because the cooperating informants were outside the circle of trusted conspirators, they could obtain only limited information. The government reasonably feared approaching other potential witnesses would alert the principal suspects of the investigation. Moreover, the government reasonably believed Oklahoma State Department of Health employees and nursing home operators would not risk retaliation from Mr. VanMeter.

Similarly, agents reasonably explained their choice to not use grand jury investigation or grants of immunity. Under the circumstances investigators believed the risk that witnesses would lie to the grand jury, claim their Fifth Amendment privilege, or inform principal suspects of the investigation outweighed modest potential evidentiary gains. Agents also explained search warrants were not reasonably likely to produce physical evidence of the verbal

communications at the heart of the extortion investigation. Furthermore, the government explained infiltrating undercover agents or informants was unreasonable under the circumstances. To successfully infiltrate the "tight-knit" nursing home community would have taken many additional months or years. This delay would have continued to risk the safety and health of nursing home residents. Finally, agents used pen registers and toll records to establish the number and duration of calls. However, these records could not uncover the content of the conversations at issue in the extortion investigation. Because federal agents used normal investigation procedures or reasonably explained why those procedures would fail or be too dangerous, Mr. VanMeter has not overcome the presumption the wiretap authorizations were proper.

## III.

Mr. VanMeter next argues inclusion of quotes and paraphrased language from the intercepted telephone conversations in the criminal complaint "violated the sealing and non-disclosure requirement" of the federal wiretapping statute. Congress allows law enforcement officers to disclose intercepted telephone conversations where appropriate to the proper performance of official duty. The federal wiretap statute states:

> Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of

> any wire, oral, or electronic communication or evidence derived
> therefrom may use such contents to the extent such use is appropriate
> to the proper performance of his official duties.

18 U.S.C. § 2517(2).  Disclosure under the § 2517(2) performance of duty exception does not require prior sealing in compliance with § 2518(8)(a).  *United States v. Carson*, 52 F.3d 1173, 1186 (2d Cir. 1995).  The Seventh Circuit has held "Title III does not forbid the government to make public disclosure of criminal charges even if the charges include information obtained from wiretapping unless the criminal proceedings themselves are nonpublic." *Apampa v. Layng*, 157 F.3d 1103, 1106 (7th Cir. 1998) (citation omitted), *cert. denied*, 528 U.S. 908 (1999).  Whether briefly quoting intercepted communications in the criminal complaint is a permissible disclosure under Title III presents a legal question subject to *de novo* review.  *Castillo-Garcia*, 117 F.3d at 1186.  Establishing probable cause to arrest suspected criminals before a magistrate is at the core of law enforcement officers' official duties.[7]  Moreover, federal agents

---

[7] Mr. VanMeter's citation of *Certain Interested Individuals v. Pulitzer Publ'g Co.*, 895 F.2d 460 (8th Cir.), *cert. denied*, 498 U.S. 880 (1990), is unpersuasive.  *Certain Interested Individuals* does not address whether agents may include quotes from intercepted material in publicly filed documents consistent with proper performance of their official duties.  *Id.* at 465.  Rather, that decision takes for granted such use is permissible under § 2517(2).  *Id.* ("18 U.S.C. § 2517(2) ... authorizes the use of wiretap information in search warrant affidavits.").  At issue in *Certain Interested Individuals* was whether affidavits filed with the court would be turned over to a newspaper, not whether initial public filing of documents containing intercepted material is permissible.  *Id.* at 461-62.  Mr. VanMeter mistakenly argues *Certain Interested Individuals* prohibits

quoted and paraphrased only as much intercepted communication as was necessary to present probable cause for Mr. VanMeter's arrest. Preventing officers from including limited disclosure to obtain arrest warrants would frustrate Congressional intent to allow legitimate wiretap interceptions in criminal prosecutions. Accordingly, we hold the federal agent was within his official duty when he briefly quoted and paraphrased intercepted telephone communications to establish probable cause for Mr. VanMeter's arrest.

**IV.**

Mr. VanMeter argues there was insufficient evidence to sustain a conviction of bribery concerning a program receiving federal funds under 18 U.S.C. § 666. Mr. VanMeter does not here dispute he solicited a bribe in exchange for helping a nursing home operator defraud funds controlled by the federal Health Care Finance Administration. Rather, Mr. VanMeter contends the bribe was not connected to a transaction "of" his agency within the meaning of the offense because these federal funds were "not the money of the Oklahoma State Department of Health." We review the sufficiency of evidence for clear error. *United States v. Reynolds*, 960 F.2d 1501, 1511 (10th Cir.), *cert. denied*,

_____

the initial public filing of the documents, which it does not.

-18-

506 U.S. 1035 (1992). Section 666 states:

> Whoever ... being an agent ... of a State ... or any agency thereof ... corruptly solicits ... anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions *of such* organization, government, or agency involving anything of value of $5,000 or more ... shall be fined under this title, imprisoned not more than 10 years, or both.

18 U.S.C. § 666(a) (emphasis added). Whether the federal government or Mr. VanMeter's Oklahoma agency controlled the money Mr. Smart hoped to appropriate is irrelevant. The federal Health Care Finance Administration delegated to the Oklahoma State Department of Health responsibility to maintain accurate records of bed certification in Oklahoma nursing homes. Therefore, receiving a fraudulently backdated letter concerning a nursing home's qualification for federal payment is a transaction "of" the Oklahoma State Department of Health. The actual payment of Medicare funds is not the transaction at issue in this case. Accordingly, we find Mr. VanMeter's insufficient evidence argument is without merit.

## V.

Finally, Mr. VanMeter argues the district court erred in applying a two-level upward adjustment for supervising Richard Pralle, an employee of the J. Smart Company, in furtherance of the scheme. Specifically, Mr. VanMeter

contends Mr. Pralle was not a "participant" within the meaning of the federal sentencing guidelines because Mr. Pralle was not "criminally responsible for commission of the offense of offering or soliciting a bribe as defined by 18 U.S.C. § 666." The United States Sentencing Guidelines Manual applies a two-level upward adjustment where the defendant was "the organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1, comment. (n.2) (2000). "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." *Id.*, comment. (n.1). Moreover, "[t]he determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct), ... and *not solely on the basis of elements and acts cited in the count of conviction*." *Id.*, Ch. 3, Pt.B, intro. comment. (emphasis added). We review a sentencing court's determination that a defendant was an organizer, leader, manager, or supervisor of a criminal activity under the Sentencing Guidelines for clear error. *United States v. Cruz Camacho*, 137 F.3d 1220, 1223-24 (10th Cir. 1998).

Mr. VanMeter's argument fails because we consider all relevant conduct under U.S.S.G. § 1B1.3 in determining the application of a U.S.S.G. § 3B1.1 aggravating role adjustment. U.S.S.G., Ch. 3, Pt.B, intro. comment. Mr.

-20-

VanMeter supervised Mr. Pralle in committing crimes in order to further and conceal their scheme to defraud the government. Mr. VanMeter gave instructions to Mr. Pralle on how to convince Oklahoma State Department of Health officials the fraudulently backdated letter was genuine. Moreover, Mr. VanMeter told Mr. Pralle to prepare additional letters corroborating the backdated letter to quell the suspicions of the federal Health Care Finance Administration. Mr. Pralle even recited a proposed fraudulent letter over the telephone for Mr. VanMeter's approval. Accordingly, the district court found Mr. Pralle was a "participant" because he was criminally responsible for violations of 18 U.S.C. § 1035 (outlawing willful concealment of material facts and materially false statements about reimbursement for health care services) and § 1347 (proscribing schemes to defraud health care programs). It makes no difference Mr. Pralle may not have been responsible for violating 18 U.S.C. § 666. The district court correctly applied the aggravating adjustment based on Mr. VanMeter's supervision of Mr. Pralle's other relevant crimes. Therefore, we find no clear error in the district court's upward adjustment of Mr. VanMeter's sentence.

For the above reasons, we **AFFIRM** the district court rulings on all issues presented.[8]

---

[8] The government filed a motion to supplement the record, asking to include a transcript of an April 17, 2000 telephone conversation between Mr. VanMeter and Mr. Smart. Because a transcript of the April 17 conversation would not materially aid our decision, the government's motion to supplement the record is denied.

00-6456, *United States v. VanMeter*

**LUCERO**, Circuit Judge, concurring.

I join the majority opinion in all respects, save Part II, as to which I concur in the result. I cannot join Part II because the appropriate standard of review for examining whether the government has satisfied the necessity requirement of 18 U.S.C. § 2518(1)(c) was settled in *United States v. Armendariz*, 922 F.2d 602 (10th Cir. 1990), as being review for abuse of discretion.[1]

Under *Haynes v. Williams*, "[a] published decision of one panel of this court constitutes binding circuit precedent constraining subsequent panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court." 88 F.3d 898, 900 n.4 (10th Cir. 1996). A corollary to this principle is that when faced with an intra-circuit conflict, "a panel should follow earlier, settled precedent over a subsequent deviation therefrom." *Id.*; *see also King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 n.1 (10th Cir. 1999) ("To the extent that a more recent panel decision conflicts with the standard of review enunciated in prior Tenth Circuit authority, we are bound by the earlier cases." (citing *Clymore v. United States*, 164 F.3d 569, 573 n.5 (10th Cir. 1999))).

The majority concludes that *Armendariz* does not preclude de novo review

---

[1] "Although we examine de novo whether a full and complete statement was submitted meeting section 2185(1)(c)'s requirements, we review the conclusion that the wiretap[] [was] necessary in each situation for an abuse of discretion." *Armendariz*, 922 F.2d at 608 (quotation omitted).

because *Armedariz's* articulation of the standard of review "cannot be described as 'settled.'" (Maj. Op. at 12.) I disagree. *Armendariz* settled this point of law when it announced the relevant standard of review for the first time in a published opinion that has yet to be overruled by the en banc court. As settled precedent, *Armendariz* cannot be dismissed by subsequent panels.[2]

The panel could have sought en banc review of the standard of review as was done in *Romano v. Gibson*, 239 F.3d 1156 (10th Cir.), *cert. denied*, 122 S. Ct. 628 (2001), where the panel was similarly faced with an intra-circuit conflict. The *Romano* panel concluded that the earlier, binding, authority was incorrect; however, it was constrained by the principle that "[w]hen confronted . . . with inconsistent Tenth Circuit holdings, we are generally bound by the first decision." *Id.* at 1169. The issue was therefore submitted to the en banc court, which reconsidered the earlier authority and allowed the panel to apply the rule announced in the subsequent cases. *Id.*

I conclude that absent en banc reconsideration, we are bound by *Armendariz*.

---

[2] Moreover, the *Armendariz* articulation of the standard of review is more consistent with the jurisprudence of our sister circuits than the majority's analysis.