**F I L E D**

**UNITED STATES COURT OF APPEALS**

**JAN 6 2004**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RICARDO ERNESTO MARTINEZ,

Defendant-Appellant.

No. 03-1284
(District of Colorado)
(D.C. No. 01-CR-301-WM)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

## I.    INTRODUCTION

Appellant-defendant Ricardo Ernesto Martinez was charged by indictment

with twenty-five counts of mail fraud and aiding and abetting.  The same

indictment charged Miriam Montes, Martinez's live-in girlfriend, as a co-

defendant.  Martinez entered into a plea agreement and pleaded guilty to one

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

count of mail fraud and aiding and abetting under 18 U.S.C. §§ 2 and 1341. As part of this plea agreement, the government dismissed the charges against Montes.

Martinez objected to the conclusion in the Presentence Investigation Report ("PSR") that Montes was a participant within the meaning of United States Sentencing Guideline ("U.S.S.G.") § 3B1.1(c) (1997). The district court nevertheless found that Montes was aware of the fraudulent nature of the operation and was a participant under § 3B1.1(c). Consequently, the district court imposed a two-level increase to Martinez's base-offense level pursuant to U.S.S.G. § 3B1.1(c) on the ground that he was an "organizer, leader, manager or supervisor" of Montes. The court sentenced Martinez to forty-one months' imprisonment, three years of supervised release, a $250,000 fine, and $17,934 restitution. Martinez appeals the two-level increase pursuant to U.S.S.G. § 3B1.1(c).

Exercising jurisdiction pursuant 18 U.S.C. § 1291 and 18 U.S.C. § 3742, this court **affirms** the district court's factual finding that Montes was a participant and the attendant increase in Martinez's offense level under U.S.S.G. § 3B1.1(c).

## II.     BACKGROUND

Martinez was the owner of a business named Action Master International ("AMI"), which solicited people, in an English-language ad, to register to become "homeworkers" who stuff envelopes for AMI. The solicitation stated that: (1) one

could register to become a homeworker by mailing a $39.00 refundable deposit to AMI; (2) AMI would then send the individual instructions and supplies; (3) if the individual sent an additional $2.00, AMI would send out the instructions and supplies by first-class mail; and (4) the homeworker would be paid $2.00 per envelope stuffed and returned to AMI. These solicitations were mailed to thousands of individuals throughout the United States.

AMI had several employees who worked at a residence in Miami, Florida, that Martinez shared with Montes. Montes registered the business name "American Master International" with the Florida Division of Corporations and opened three bank accounts in the name of "Miriam Montes d/b/a Action Master International."

Approximately 23,500 individuals responded to the solicitation by mailing the registration form, along with a check or money order for either $39.00 or $41.00, totaling $1,017,153, to AMI. AMI had several mailboxes at Mail Boxes Etc. locations throughout the United States that were set up by AMI employees Ana Sanchez and Orlando Alvarez. Mail Boxes Etc. then forwarded these payments to another mailbox in Miami, where one of AMI's employees picked up the payments and brought them to Martinez's residence. Montes or another employee then deposited the money in one of the three bank accounts.

AMI processed the registrations and sent out packets of material to most of those individuals who registered. One type of packet was a "Welcome" package that instructed the recipients to post flyers soliciting more "homeworkers," and did not include the promised envelopes for stuffing. Consequently, many individuals wanted refunds, but the "Welcome" packages contained no address or phone number for AMI. The only address or phone number was on the original solicitation and registration form. The solicitation phone number had a recorded message on how to become a "homeworker," but did not give an address or alternate phone number for AMI.

At the sentencing hearing, the English-speaking AMI workers testified that they thought AMI was a legitimate business and were unaware that the homeworkers were not receiving what they had been promised. Montes spoke only Spanish. All of the other employees, however, also spoke Spanish and communicated with Montes in Spanish. One employee, Sanchez, testified that she never discussed, translated, or explained the AMI solicitation to Montes. A second employee also testified that he never saw Montes read the AMI solicitation. An expert testified that in his opinion, there was "not a chance" that Montes could have comprehended the AMI solicitation had she attempted to read it herself.

Sanchez testified that she was served with papers investigating AMI and told Martinez she had contacted an attorney. She also told Martinez she intended to cooperate in the criminal investigation. After this occurrence, Montes became very hostile toward Sanchez and fired her. Sanchez testified before the grand jury that shortly before she was fired by Montes, she asked questions about the fraud inquiry which drove Martinez and Montes to treat her as an enemy.

Montes' duties at AMI included maintaining the database of AMI's mailing lists, opening the envelopes that contained the payments and preparing them for deposit in AMI's bank accounts, and supervising, alongside Martinez, AMI's employees. Sanchez testified that Montes was AMI's co-owner. One employee, Alvarez, testified that he was not sure if Montes knew everything that was going on in the business, but that "she knew something was going on, you know." Montes was also heard to converse with Martinez about AMI in Spanish.

## III.  DISCUSSION

A factual finding that an individual was a leader or organizer under U.S.S.G. § 3B1.1(c) must be based on a preponderance of the evidence. *United States v. Anderson*, 189 F.3d 1201, 1211 (10th Cir. 1999). To properly impose a two-level increase under U.S.S.G. §3B1.1, the court must first find that there was more than one participant involved in the offense. *United States v. Bauer*, 995 F.2d 182, 183 (10th Cir. 1993).

This court reviews the district court's interpretation and application of the Sentencing Guidelines *de novo* and its factual findings for clear error. *Bauer*, 995 F.2d at 183. The district court's factual findings will not be reversed for clear error unless they are without factual support in the record or, if after reviewing all the evidence in the record, this court is left with the definite and firm conviction that a mistake has been made. *United States v. Valdez-Arieta*, 127 F.3d 1267, 1270 (10th Cir. 1997). In addition, this court gives due deference to the district court's application of the Sentencing Guidelines to the facts. 18 U.S.C. § 3742(e); *Bauer*, 995 F.2d at 183.

Martinez challenges the two-level increase pursuant to U.S.S.G. § 3B1.1(c), the application of which requires a finding that the offense involved more than one participant. *Bauer*, 995 F.2d at 183. Martinez challenges this increase on the sole ground that the district court clearly erred in finding that Montes was a participant under U.S.S.G. § 3B1.1(c). The crux of Martinez's argument is that Montes was not a participant because: (1) she was Spanish-speaking and the fraud was conducted in English, which she could not comprehend; (2) Montes' involvement in the business was no more extensive than that of the other workers who were found to be non-participants by the district court; and (3) there is no direct evidence that Montes was aware of the misrepresentations being made by AMI. In addition, Martinez argues, the English-speaking employees could not

have communicated the fraud to Montes because they believed AMI was a legitimate business. Therefore, Martinez reasons, Montes thought she was working in a legitimate business and the district court clearly erred in finding that she was a participant in the offense. This court disagrees.

The district court did not clearly err in finding that Montes was a participant in the offense. A participant under § 3B1.1 is a person who is criminally responsible for the commission of the offense, but need not have been convicted. U.S.S.G. § 3B1.1, cmt. n.1. Individuals who may have played some part in the commission of the offense, but who lack the requisite criminal intent, are not criminally responsible and therefore not participants. *See United States v. VanMeter*, 278 F.3d 1156, 1166 (10th Cir. 2002). The district court based its finding that Montes was a participant on the following evidence: (1) Montes was involved in the management and operation of the fraudulent activity, including creating the entity and bank accounts for the entity; (2) Montes had "quite a negative reaction to Sanchez" after Sanchez told Martinez about her intent to get an attorney to represent her in the fraud investigation; and (3) Montes "lived with the defendant."

Viewed in totality, Montes' living with the defendant, registering AMI's corporate name, establishing its bank accounts, participating in its day-to-day operations, and being regarded by AMI's other employees as a principal, support

the finding that she was a participant in the fraud. Indeed, courts have held that association or marriage to a criminal, *standing alone*, does not support the inference that a person is a criminal or shares the criminal's guilty knowledge. *See United States v. Forrest*, 620 F.2d 446, 451 (5th Cir. 1980). As indicated above, however, the district court's finding that Montes was a participant is premised on much more than her personal relationship with Martinez. Further, unlike AMI's non-participant employees, Montes registered AMI's name with the Florida Division of Corporations, established its bank accounts *in her own name* and controlled them. The totality of Montes' involvement, which goes far beyond Sanchez's and Alvarez's daily work and opening of mailboxes on AMI's behalf, support the district court's finding that Montes knew of AMI's fraudulent activities.

In addition, Martinez claims that because the district court did not mention Montes' lack of English ability when it made its finding, it clearly erred in finding that she was a participant. Montes' inability to comprehend English, however, at most demonstrates that she could not have acquired knowledge of the fraud by *reading* the printed solicitations. This does not preclude *other* ways in which Montes could have acquired such knowledge. As discussed above, the totality of Montes' activities in establishing and controlling AMI's corporate status and bank accounts, her day-to-day activities at AMI, and her personal, live-

in relationship with Martinez *in the same* residence that housed AMI's office, support the district court's finding that Montes was a participant. Furthermore, evidence shows that Montes, alongside Martinez, told an AMI employee to "only send refunds to the people who were 'pesky' or getting 'nasty.'" Evidence also shows that Martinez often communicated with Montes about AMI in Spanish and that all internal AMI communications were conducted in Spanish. Likewise, Montes' hostility toward and firing of Sanchez shortly after Sanchez's discussions with Martinez support a reasonable inference that Martinez told Montes about his discussions with Sanchez. This further supports the finding that Montes had guilty knowledge of fraud.

Given the totality of the evidence presented by the government in this case, this court cannot conclude that the district court clearly erred in finding that Montes was a participant in the offense. Given that Martinez does not challenge the finding that he was an organizer or a leader on any other grounds, the two-level increase under U.S.S.G. § 3B1.1(c) was proper.

## IV. CONCLUSION

For the foregoing reasons, this court **AFFIRMS** the district court's finding that Montes was a participant in Martinez's criminal enterprise and that Martinez

was an organizer or a leader within the meaning of U.S.S.G. § 3B1.1(c).

Martinez's sentence is therefore **AFFIRMED**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge