**UNITED STATES COURT OF APPEALS**

**TENH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

JAVIER SEGURA,

     Defendant-Appellant.

No. 08-4067
(D.C. No. 2:05-CR-00895-DAK-9)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, EBEL,** and **GORSUCH**, Circuit Judges.

Javier Segura entered a conditional plea of guilty to conspiracy to distribute

methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846.  The

district court sentenced Segura to 70 months' imprisonment followed by 60

months' supervised release.  Segura appeals the district court's denial of his

motion to suppress evidence from two wiretaps.  We have jurisdiction pursuant to

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

28 U.S.C. § 1291, and affirm.

I

During an investigation of a drug trafficking operation, a special agent with the Drug Enforcement Administration ("DEA") submitted affidavits in support of applications for orders authorizing the interception of wire communications, commonly known as "wiretapping." Two affidavits are presently at issue. The agent submitted the first on August 22, 2005, and the second on October 24, 2005. Each affidavit is approximately fifty pages in length and provides details of: (1) the agent's professional experience; (2) the telephone number for the intercepted communications; (3) the targeted individuals of the investigation; (4) the objectives of the investigation and the intercepted communications; (5) prior applications for wiretaps; (6) the history of the investigation; and (7) the requested duration of the wiretaps. Additionally, each affidavit contains a section that addresses investigative techniques that have been tried, or reasonably appear likely to fail if tried, or are likely to be dangerous to employ. Each affidavit concludes with a discussion of efforts that will be employed to minimize the monitoring of communications unrelated to the investigation. Based upon the representations in the affidavits, a district court judge authorized both of the requested wiretaps.

As a result of the wiretaps, Segura and eighteen co-defendants were indicted. The United States charged Segura with one count of conspiring to

2

possess methamphetamine with intent to distribute and eight counts of possession of methamphetamine with intent to distribute. Segura moved to suppress evidence obtained from the August 22, 2005 and October 24, 2005 wiretaps. A magistrate judge issued a Report and Recommendation denying the motion. Segura objected. Over this objection, the district court adopted the Report and Recommendation. Segura entered a conditional guilty plea to the conspiracy charge, and the United States dismissed the remaining counts. After the district court sentenced Segura, he timely appealed the denial of his motion to suppress.

II

Title 18 U.S.C. § 2518 establishes the procedure and requirements for obtaining a wiretap. Segura cites two requirements of this statute, the necessity requirement and the minimization requirement, as the basis for his motion to suppress.

A.    Necessity

The necessity requirement mandates that each application for a wiretap shall include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. 2518(1)(c); United States v. Zapata, 546 F.3d 1179, 1185–86 (10th Cir. 2008) (identifying this rule as the "necessity requirement" and defining its purpose as "to ensure that wiretapping . . . is not used in situations where traditional investigative

3

techniques would be sufficient to expose the criminal activity"). After reviewing the wiretap application, the judge must determine whether "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous[.]" 18 U.S.C. § 2518(3)(c).

As a result of these two statutory provisions—18 U.S.C. § 2518(1)(c) and (3)(c)—our standard of review for challenges to the necessity requirement is two-pronged. "Although we examine de novo whether 'a full and complete statement' was submitted meeting section 2518(1)(c)'s requirements, we review the conclusion that the wiretap [ ][was] necessary [under § 2518(3)(c)] in each situation for an abuse of discretion." United States v. Mitchell, 274 F.3d 1307, 1311 (10th Cir. 2001) (third alteration added).

When reviewing de novo whether the government submitted a full and complete statement under 18 U.S.C. § 2518(1)(c) to satisfy the necessity requirement, we apply a common sense approach. United States v. Verdin-Garcia, 516 F.3d 884, 890 (10th Cir. 2008) ("The necessity requirement is not to be treated hypertechnically. We expect the government to act in a common sense fashion . . . ." (quotation omitted)). Accordingly, we consider "all the facts and circumstances." Id. Although "[t]he overall burden on the government 'is not great,'" id. (quoting United States v. Wilson, 484 F.3d 267, 281 (4th Cir. 2007)), generalities or conclusory statements "are insufficient to support a wiretap application," United States v. Cline, 349 F.3d 1276, 1280–81 (10th Cir. 2003).

4

Once a judge authorizes a wiretap, we presume its validity and we place the burden on the defendant to prove its invalidity. Verdin-Garcia, 516 F.3d at 890 (citing United States v. Radcliff, 331 F.3d 1153, 1160 (10th Cir. 2003)). Consequently, we review the district court's conclusion that a wiretap was necessary for abuse of discretion. Zapata, 546 F.3d at 1185. For a judge to authorize the wiretap, the judge must determine, based on the submitted affidavit, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous[.]" 18 U.S.C. § 2518(3)(c). This court has defined "normal investigative procedures" to include: (1) standard visual and aural surveillance; (2) questioning witnesses and participants, "including through the use of grand juries"; (3) search warrants; (4) "infiltration of criminal enterprises by undercover agents or confidential informants"; and (5) the use of pen registers and telephone tracing devices. Zapata, 546 F.3d at 1185 (citing United States v. Killingsworth, 117 F.3d 1159, 1163 (10th Cir. 1997)); Cline, 349 F.3d at 1280 (identifying "pen registers and trap and trace devices" as "traditional [investigative] techniques"). To meet the necessity requirement, however, the government does not have "to exhaust all other conceivable investigative procedures before resorting to wiretapping." Zapata, 546 F.3d at 1186 (quotation omitted).

Segura argues that the district court abused its discretion by determining that a wiretap was necessary and further that the government's submissions failed

5

to meet the necessity requirement.  Aplt. Br. at 6.  Segura contends the government failed to demonstrate with specificity that the use of three normal investigative procedures—standard visual and aural surveillance, search warrants, and infiltration by undercover agents or informants— "have been tried and failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." Aplt. Br. at 9 (citing United States v. Small, 423 F.3d 1164, 1172 (10th Cir. 2005) (quoting 18 U.S.C. § 2518(3)(c))).  Segura also contends that the submitted affidavits' discussions of these techniques rely on generalities and conclusory statements that "could apply to every member of every alleged drug conspiracy." Aplt. Br. at 10.

After reviewing the submitted affidavits, we disagree.  In contrast to Segura's assertions, the affidavits provide extensive details of the investigation techniques utilized and why they have failed or were inadequate in this case.  We address individually the investigative techniques that Segura challenges.

1.     Standard Visual and Aural Surveillance

Segura argues that the affidavits are insufficient because the affidavits' statements—"Physical surveillance of the subjects of this investigation . . . is unlikely to provide sufficient further evidence . . ." and "much of the illegal activity associated with this organization takes place inside locations which are o[u]t of view of law enforcement surveillance efforts . . ."—are general and conclusory.  Aplt. Br. at 10.

6

First, we note that the description of activity in this investigation occurring indoors is neither general, nor conclusory. See Zapata, 546 F.3d at 1187 ("[B]ecause members of the organization were . . . more thoroughly concealing their activities, [the investigating agent] explained that extensive surveillance . . . [was] unlikely to produce information . . . ."). Second, Segura's argument ignores several other details provided in the affidavits' explanation for why standard surveillance was insufficient for this investigation's objectives. Some of these details include: (1) indications by the target of the investigation that he is aware of police surveillance, including his pointing out police vehicles to the affiant and moving locations of transactions at the last minute; (2) difficulties in following the target of the investigation because he uses a variety of vehicles and switches vehicles during a drug transaction; and (3) difficulty in even determining where the target of the investigation is living on a daily basis.

These facts are similar to the facts of Verdin-Garcia. In Verdin-Garcia, we noted that the affidavits:

> describe how the subjects became evasive under surveillance, and note that continued blanket surveillance would likely compromise the investigation . . . [and] explain that visual surveillance, however successful, cannot do much to establish the relationships between the investigation's subjects, the structure of their organization, the purposes of meetings, or the sources of their drug supply.

516 F.3d at 890. As in Verdin-Garcia, we conclude that Segura has "shown no deficiency in the government's proffered rationale for needing wiretaps" when

7

traditional surveillance was insufficient.  Id. at 890–91; see also Zapata, 546 F.3d

at 1186 ("Agent . . . stated that members of the organization were 'extremely

surveillance conscious' . . . .").

2.      Search Warrants

Segura argues that "the government has failed to adequately demonstrate

with specificity that the use of search warrants has failed."  Aplt. Br. at 11.  This

argument attempts to relegate the affidavits' discussion of the use of search

warrants to one sentence.  Here, the only sentence Segura referenced from the

affidavits is: "Execution of any search warrants prior to arrest would inevitably

tip-off the targets of this investigation and bring it to a premature close."  Aplt.

Br. at 11.  We have considered such descriptions relevant in determining whether

the government's submissions met the necessity requirement.  See Verdin-Garcia,

516 F.3d at 891 ("Searches at these locations would alert the target subjects to the

government's investigation and cause them to flee . . . and/or drastically change

their operations." (emphasis and quotation omitted)).

Segura omits other statements in the affidavits that explain why the use of

search warrants would be an insufficient investigative technique in this case.  The

affidavits include additional details that address the uncertainty about the location

of the narcotics and the transactions, and the need to intercept communications to

determine the various locations of the narcotics to allow for the execution of

simultaneous search warrants.  In prior cases, we have held similar assertions

8

regarding the use of search warrants to be sufficient to meet the necessity requirement. E.g., Veradin-Garcia, 516 F.3d at 891; Cline, 349 F.3d at 1283 ("While [search warrants] had resulted in the seizure of drugs and methamphetamine laboratories and proceeds, they had failed to uncover the scope of the operations, or identify the sources of the precursor chemicals, the methods of distribution, and other members of the conspiracy."); Garcia, 232 F.3d at 1314 ("The affidavit also indicates that further search warrants would not reveal the full extent of [the target's] activities or his suppliers.").

3.    Infiltration by Undercover Agents or Confidential Informants

As seen in his prior arguments concerning the adequacy of the affidavits at issue, Segura focuses upon a single statement in the affidavits' discussion of infiltration of the target organization by undercover agents or confidential informants. While he acknowledges that the affidavits contain broader descriptions, Segura argues that the affidavits only rely on the "general statement" that "individuals involved in narcotic distribution try to protect themselves by not disclosing the details of their business to low-level associates and outsiders." Aplt. Br. at 13.

The affidavits in fact provide significant details about the possibility of infiltrating the target organization. The affidavits indicate that the target has declined to make larger purchases, maintained a secretive attitude, not discussed the source of his supply, and limited the involvement of other conspirators in the

undercover drug sales. These additional details are sufficient to meet the necessity requirement regarding the ineffectiveness of infiltration of the criminal enterprise. E.g., Zapata, 546 F.3d at 1186 ("[The agent] stated that [the target] had demonstrated a reluctance to do business with unknown persons and that the organization consisted of close knit family members who tend to deal amongst themselves." (quotation omitted)); Cline, 349 F.3d at 1282 ("The affidavits adequately established that, due to the close-knit community, as well as the suspicious nature of those involved in the drug organization and the difficulty of introducing anyone new into it, the traditional investigative technique of informants had been tried but was unlikely to meet with further success."); United States v. VanMeter, 278 F.3d 1156, 1164 (10th Cir. 2002) ("[B]ecause the cooperating informants were outside the circle of trusted conspirators, they could obtain only limited information."); Garcia, 232 F.3d at 1315 ("We conclude that law enforcement officers had made reasonable attempts to use informants, but that further use of this technique or attempts to infiltrate the organization would be ineffective and potentially dangerous.").

Moreover, when considering infiltration of criminal enterprises by undercover agents or confidential informants, we have noted that under our common sense approach the inherent danger in any such infiltration is an important consideration. Veradin-Garcia, 516 F.3d at 891–92 ("In considering whether the government acted in a common sense fashion on this issue, we are

10

keenly aware that infiltration of a criminal organization is extremely dangerous and is used sparingly by most law enforcement agencies." (quotations and brackets omitted)). While not included in the discussion of other investigative techniques, we note that the affidavits describe the target of the investigation as paranoid, cautious, and highly aware of police activity around him.

After reviewing the government's submissions de novo, we conclude that the government provided a full and complete statement that explained sufficiently why the wiretaps were necessary. Based on that conclusion—and that the submitted affidavits gave reasons that corresponded to similar situations in our cases upholding the necessity of wiretaps—we also conclude that the district court did not abuse its discretion in authorizing the wiretaps.

B.    Minimization

Section 2518(5) states in pertinent part:

> Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, *shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception* under this chapter, and must terminate upon attainment of the authorized objective, or in any event in thirty days.

18 U.S.C. § 2518(5) (emphasis added). This minimization requirement "does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to minimize the interception of such conversations." United States v. Yarbrough, 527 F.3d 1092,

11

1097 (10th Cir. 2008) (quotations omitted). If a wiretap's execution does not conform to this minimization requirement, a defendant may move to suppress evidence obtained from the wiretap. Id.

Segura appeals the district court's denial of his motion to suppress, which was based in part on the minimization requirement. "On appeal from the denial of a motion to suppress evidence obtained pursuant to a wiretap, this court accepts the district court's factual findings unless clearly erroneous, reviews questions of law de novo, and views the evidence in the light most favorable to the government." Id. We also note that whether the wiretap was executed in accordance with the minimization requirement depends on the facts and circumstances of each case. Id. at 1097–98.

Here, the orders authorizing the wiretaps included instructions to minimize the interception and disclosure of communications subject to interception. Nonetheless, Segura contends that sixteen of the calls monitored during the wiretaps should have been minimized as irrelevant. Segura identified the same sixteen calls during the magistrate judge's initial consideration of the motion to suppress. Segura presently argues that the district court improperly relied on the government's explanation of the minimization techniques used during the challenged wiretaps. The government explained that "two minutes was provided to agents as a reasonable and permissible time period in which to initially monitor a call." Aplt. Br. at 15. Segura states that this "blanket instruction . . . violates

the statute's minimization requirement." Aplt. Br. at 16. Segura also critiques the omission of this two-minute-limit instruction from the submitted affidavits.

While the Supreme Court and this court have established a "proper procedure for determining the reasonableness of governmental efforts to avoid monitoring non-pertinent calls" and identified several factors to aid in this procedure, Yarbrough, 527 F.3d at 1098, such analysis is unnecessary to resolve Segura's present arguments. Segura contends that the government's two-minute instruction violates the minimization requirement. We disagree. "[C]onsistent with Supreme Court and Tenth Circuit precedent, in analyzing the reasonableness of the government's minimization efforts, we exclude calls under two minutes." Yarbrough, 527 F.3d at 1098 (citing Scott v. United States, 436 U.S. 128, 140 (1978), for the statement "agents can hardly be expected to know that [very short] calls are non pertinent prior to their termination" and United States v. Willis, 890 F.2d 1099, 1102 (10th Cir. 1989), as an example of a court "excluding from minimization analysis calls 'which lasted less than two minutes'").

Segura's criticism that the two-minute instruction does not appear in the agent's affidavits is similarly baseless. The minimization requirement applies to the order authorizing the wiretap, not the application for a wiretap. 18 U.S.C. § 2518(5) (applying minimization to "[e]very order"). The orders authorizing the present wiretaps contained the requisite instructions to minimize the interception and disclosure of communications not otherwise subject to interception. As

13

noted, our precedent establishes that the two-minute instruction complies with these instructions.

Segura does not challenge the district court's factual findings regarding the minimization requirement. As regards Segura's legal challenge to the minimization requirement, we conclude the district court properly rejected this contention as well.

## III

We affirm the district court's denial of Segura's motion to suppress evidence obtained from the wiretaps.

Entered for the Court


Mary Beck Briscoe
Circuit Judge